**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 33578 & 35037**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2009 Opinion No. 14** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: March 10, 2009** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| JESSICA HALBESLEBEN, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction and consecutive terms of ten years, with minimum periods of confinement of three years, for two counts of felony injury to a child, <u>affirmed</u>.

Greg S. Silvey, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Judge

Jessica Halbesleben appeals from her judgment of conviction and sentences for two counts of felony injury to a child.  Additionally, Halbesleben appeals from the district court's order denying her I.C.R. 35 motion for reduction of her sentences.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Police responded to Halbesleben's home based on a report that her children had been left alone for several days without supervision.  Upon entering the home, police discovered that Halbesleben's seven children,[1] ranging in age from one to fourteen, were living in deplorable and

_____

[1]     Halbesleben has eight biological children, but Halbesleben and her husband had previously lost custody of one of them.

1

inhuman conditions. The home smelled of a foul odor; the floors and walls and furniture were filthy and stained; there were piles of trash, dirty laundry and used diapers strewn across hallways and in the corners of rooms; there were numerous burns in the carpet around an unprotected wood stove; the children's bedding was filthy and several of their mattresses were saturated with urine; and shards of broken glass were found throughout the house including in the children's playroom. One of the children also had infected cuts on his hands and feet. Aside from the despicable sanitary conditions, police observed that there was very little food in the home, especially to support a family of nine, and one of the police officers had to stop one of the young girls from eating food off of the filthy floor. There were also reports of the children playing under-clothed, or practically undressed, outside during the winter months. Halbesleben claimed that she home-schooled two of the children, but the children showed ignorance in simple concepts of math and spelling. The computer, which Halbesleben claimed she used for instruction, was broken.

Additionally, without necessitating an extensive factual description, all of the children were subjected to years of physical, psychological, and sexual abuse. Halbesleben was either party to or had knowledge of much of this abuse, yet most of it went unreported to authorities. The highly-sexualized behavior then manifested itself in the actions of the children as two of the older boys subjected the younger children to various forms of sexual abuse. Halbesleben's futile response to this sexual conduct was to padlock the two boys in their room at night, even though there was a history of sexual assault between the two. This resulted in the boys leaving their room through the window and reducing them to wetting their bed in order to relieve themselves in the middle of the night. Halbesleben would also allegedly tie up the boys in order to protect the younger children while she went to the garage to smoke. However, the assaults continued unabated.

Halbesleben was charged with four counts of felony injury to a child. I.C. § 18-1501. She entered a guilty plea to two counts of felony injury to a child, and the state dismissed the other two counts as well as a separate, additional misdemeanor charge for failing to report sexual abuse. One term of the plea agreement provided that the state would recommend a term of imprisonment of ten years, with a minimum period of confinement of one year, for each count and that the defense could argue for lesser sentences. At sentencing, the prosecutor made the requisite recommendation after a recitation of some of the troubling facts of this case.

2

Additionally, the prosecutor argued that any sentences less than the recommendation would depreciate the gravity of the offenses. The district court sentenced Halbesleben to consecutive terms of ten years, with minimum periods of confinement of three years. Halbesleben did not appeal from her judgment of conviction.

Halbesleben filed a Rule 35 motion to reduce her sentences, which the district court denied. While the appeal of the denial of her Rule 35 motion was pending, Halbesleben filed an application for post-conviction relief alleging, among other things, ineffective assistance of counsel for failing to file a direct appeal from her judgment of conviction. The district court granted relief on this claim and re-entered the judgment of conviction. Halbesleben appeals from her judgment of conviction arguing that the prosecutor breached the plea agreement and that her sentences are excessive. This appeal was assigned Docket Number 35037. Halbesleben's appeal challenging the district court's order denying her Rule 35 motion for a reduction of her sentences was assigned Docket Number 33578. These two appeals have now been consolidated for our review.

## II.

## ANALYSIS

### A. Breach of the Plea Agreement

Halbesleben argues that the state breached the plea agreement because, at the sentencing hearing, the prosecutor gave the recommendation for a relatively lenient sentence only as an afterthought and effectively renounced the recommendation through vigorous argument against Halbesleben and the graphic details and implications of her crimes. The state responds that the issue was not properly preserved by a timely objection below and that Halbesleben has failed to show fundamental error. Furthermore, the state contends that the prosecutor's descriptions of the facts of this case followed by her opinion that anything less than the recommended sentences would depreciate the gravity of the crime did not constitute a breach of the plea agreement.

The Supreme Court and this Court have held that breach of a plea agreement constitutes fundamental error. *See State v. Jafek*, 141 Idaho 71, 74, 106 P.3d 397, 400 (2005) (holding that claim of state's breach of plea agreement goes to the foundation or basis of defendant's rights and, therefore, constitutes fundamental error and may be reviewed for the first time on appeal); *State v. Allen*, 143 Idaho 267, 271-72, 141 P.3d 1136, 1140-41 (Ct. App. 2006) (holding that state's breach of a plea agreement constitutes fundamental error and, therefore, defendant's

3

failure to object in the district court did not waive the right to raise the issue for the first time on appeal). It may be reviewed for the first time on appeal provided a sufficient record exists for review. *See State v. Daubs*, 140 Idaho 299, 300, 92 P.3d 549, 550 (Ct. App. 2004). In this case, the record is sufficient for our review. Therefore, we will consider whether the prosecutor's argument at the sentencing hearing constituted a breach of the plea agreement.

It is well established that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971). This principle is derived from the Due Process Clause and the fundamental rule that, to be valid, a guilty plea must be both voluntary and intelligent. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984); *State v. Rutherford*, 107 Idaho 910, 913, 693 P.2d 1112, 1115 (Ct. App. 1985). If the prosecution has breached its promise given in a plea agreement, whether that breach was intentional or inadvertent, it cannot be said that the defendant's plea was knowing and voluntary, for the defendant has been led to plead guilty on a false premise. *State v. Jones*, 139 Idaho 299, 301-02, 77 P.3d 988, 990-91 (Ct. App. 2003). In such event, the defendant will be entitled to relief. *State v. Fuhriman*, 137 Idaho 741, 744, 52 P.3d 886, 889 (Ct. App. 2002). As a remedy, the court may order specific performance of the agreement or may permit the defendant to withdraw the guilty plea. *Santobello*, 404 U.S. at 263; *Jones*, 139 Idaho at 303, 77 P.3d at 991.

The prosecution's obligation to recommend a sentence promised in a plea agreement does not carry with it the obligation to make the recommendation enthusiastically. *United States v. Benchimol*, 471 U.S. 453, 455 (1985); *Jones*, 139 Idaho at 302, 77 P.3d at 991. A prosecutor may not circumvent a plea agreement, however, through words or actions that convey a reservation about a promised recommendation, nor may a prosecutor impliedly disavow the recommendation as something that the prosecutor no longer supports. *Jones*, 139 Idaho at 302, 77 P.3d at 991. Although prosecutors need not use any particular form of expression in recommending an agreed sentence, their overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse. *Id.*

In this case, the plea agreement required that the prosecution recommend a sentence of ten years, with a minimum period of confinement of one year, for each of the two counts to which Halbesleben pled guilty. The agreement also provided that Halbesleben could argue that

the district court impose lesser sentences. At the sentencing hearing, the prosecutor began by arguing:

> In the last ten years, there has not been a worse case of child abuse in this county than what [Halbesleben] managed to accomplish in 13 years.
> From the minute she began having children, these babies were at risk. None of these children ever had a chance because they were born to [Halbesleben] and her husband.

The prosecutor then described how the two oldest children were temporarily removed from Halbesleben's custody in another state for maltreatment. When the children were returned to the Halbeslebens, they moved to Idaho.

Next, the prosecutor described how she believed the system failed the Halbesleben children because the children were brainwashed by their parents not to speak to anyone and to keep it all in the family so that they would not be taken away forever. The prosecutor described the events that led to the permanent loss of custody of one of the children and how that child had severe psychiatric conditions at the time that Halbesleben and her husband agreed to the termination of custody. As an aside, the prosecutor recounted how another child was sexually molested while in temporary foster care. The prosecutor added: "The babies [Halbesleben] allowed her older children to molest and rape for the last four years were not even born yet." The prosecutor then commented that the other children do not remember the other son who was removed and that the "parents didn't care and let him disappear."

Following the comments relating to these events, the prosecutor described the school records and a report from a preschool teacher regarding the numerous intellectual deficits and learning delays facing the children and their "desperate need of interaction, nurturing, stimulation, and routine." The preschool teacher alleged that the Halbeslebens then moved to escape scrutiny from the Department of Health and Welfare. The prosecutor argued that Halbesleben began to remove the children from school, against school recommendations, in order to isolate the problems and avoid suspicion. However, the children were not adequately instructed at home and all of the leisure time allowed a greater frequency of sexual abuse among the siblings. The prosecutor described the sexual abuse that had occurred between Halbesleben's husband and their oldest daughter, as well as sexual abuse between the siblings. The prosecutor argued that Halbesleben would leave the children unattended while she smoked methamphetamine in the garage.

The conclusion of the prosecutor's argument summarized the state's views and recommendations of this case and is best considered in context, as follows:

> We have eight children now who are orphans because of [Halbesleben's] crimes. Her contribution in the world is making eight wards of the state for the next 16 years. So, not only do we get to pay financially, but the hours these social workers and foster parents and teachers will spend driving them and encouraging them through counseling and school and comforting them in the night when their parents who were supposed to be there for them weren't, reassuring them there is enough to eat and constantly trying to bolster their self-esteem. Those costs and harm that she caused are truly incalculable. And these are children that came from her flesh -- that she carried all eight of these babies.
>
> The magnitude of the harm [Halbesleben] has caused by her crimes, I try not to think about, but it's haunting. We need to be protected, obviously, from [Halbesleben], but I think the most significant piece of this case for [Halbesleben] is that anything less than what the state recommends -- and we encourage you to follow our recommendation -- would depreciate the seriousness of what she has done over a long period of time.
>
> This didn't happen overnight. This didn't happen because she is poor. We live in a county where our children's hospitals are like palaces. We have resources available for food and free dental care and all of those things. And she sat in the garage and smoked meth.
>
> Anything less than 1 year fixed followed by 9 indeterminate for 10, consecutive to 1 plus nine for 10, would depreciate the seriousness of what she did. We are not requesting restitution in this case because I can't even begin to calculate, and I don't think she has the means to ever pay.

Halbesleben argues that the prosecutor's vigorous argument, taken as a whole, was inconsistent with the state's relatively lenient recommendation of a term of ten years, with a minimum period of confinement of one year, for each count. This inconsistency, she contends, effectively disavowed the state's recommended sentences. In support of her argument, Halbesleben cites to *Daubs*, 140 Idaho 299, 92 P.3d 549 and *State v. Wills*, 140 Idaho 773, 102 P.3d 380 (Ct. App. 2004), which, in turn, cite to *Jones*, 139 Idaho 299, 77 P.3d 988, and *State v. Lankford*, 127 Idaho 608, 903 P.2d 1305 (1995). In *Lankford*, the defendant was convicted of two counts of first degree murder and the state agreed to recommend indeterminate life sentences--the most lenient sentence possible for first degree murder--in exchange for his testimony against his co-defendant. The state made the requisite recommendation, but then presented extensive evidence in aggravation, a psychologist's testimony that the defendant was a poor candidate for rehabilitation, and argument that the defendant was highly culpable, manipulative, and dangerous. The Idaho Supreme Court held that the state had violated the plea

6

agreement by making a presentation at the sentencing hearing that was fundamentally at-odds with its obligated position that the court should impose the most lenient sentence permitted by law. *Lankford*, 127 Idaho at 617, 903 P.2d at 1314.

In *Jones*, the prosecutor agreed to recommend probation after the defendant served a period of retained jurisdiction. However, while the prosecutor made the requisite recommendation, she argued to the district court that the presentence investigator advised against supervised probation, in part, out of concern for the safety of the victims and defendant's poor prospects for rehabilitation. Additionally, the prosecutor added that, while she was bound to her recommendation, she did not have all of the aggravating information at the time of the plea agreement and, thus, left it up to the court's discretion. *Jones*, 139 Idaho at 300-01, 77 P.3d at 989-90. This Court held that the prosecutor's statements "effectively disavowed the recommendation of retained jurisdiction and advocated a harsher sentence." *Id.* at 303, 77 P.3d at 992.

In *Wills*, the prosecutor agreed to recommend a unified term of fifteen years, with a minimum period of confinement of three years, for each of two counts of lewd conduct. At the sentencing hearing, the prosecutor emphasized the defendant's pedophilia and insatiable hunger for young victims which would make it difficult to treat him and lead to a high-risk of repeat offenses of escalating severity upon his release. The prosecutor then argued:

> "What he did to these two little ones is just completely horrendous and almost unthinkable. And I think, at a very minimum, he should get three years fixed followed by twelve indeterminate for fifteen. I think the state is showing great restraint by only recommending that sentence."

*Wills*, 140 Idaho at 774, 102 P.3d at 381. This Court held that the prosecutor's argument breached the plea agreement:

> By presenting the recommended sentences as the *minimum* to be imposed and indicating that this minimum recommendation was made with "great restraint," the prosecutor failed to endorse the recommended terms as the ones the district court should accept. Instead, the prosecutor conveyed a reservation regarding the advisability of imposing those sentences and implied that longer terms would be more appropriate. This conduct was fundamentally at odds with what the state agreed to do under the plea agreement.

*Id.* at 776, 102 P.3d at 383.

7

In *Daubs*, the prosecutor agreed to recommend retained jurisdiction in exchange for defendant's guilty plea to sexual battery. However, at the sentencing hearing a different prosecutor argued:

> "Your honor, I have spoken with [the prosecutor assigned to the case], and the State has agreed to recommend no more than a Rider in this case.
>
> The PSI investigator, however, clearly is recommending prison based on the nature of Mr. Daub's crimes, his prior record, and his substance abuse problems.
>
> Rather than having me restate the information presented to the Court in the PSI and in the letters from the victims, I would ask that this Court hear from [the victim's parents], who are here. They're better able than I am to explain the horrific consequences that this crime has had on them, their daughters, and their entire family."

*Daubs*, 140 Idaho at 301, 92 P.3d at 551. This Court held that the prosecutor's argument, when taken in context with the entire proceeding, was fundamentally at-odds with the terms of the plea agreement. *Id.* The prosecutor's over-emphasis on the harsher sentence recommended in the presentence investigation report (PSI) acted as a constructive disavowal of its required recommendation. *Id.*

The facts of these cases relied on by Halbesleben are all distinguishable from her case. In each of the cases cited above, the prosecutor acknowledged the recommendation required by the plea agreement but argued various other reasons why the district court should not accept the recommendation and, instead, impose a more severe sentence. Or, in the case of *Lankford*, the prosecutor presented additional aggravating evidence which, at a sentencing for first degree murder, only served to favor imposition of the death penalty or fixed life. This was entirely inconsistent with the state's agreement to recommend an indeterminate term of life imprisonment. In the present case, the prosecutor made no allusion to a more severe recommendation contained in the PSI nor gave any personal opinion that Halbesleben's crimes merited a greater punishment than what was recommended. The prosecutor's vigorous argument did not undermine the sentencing recommendation but, rather, buttressed it against any argument from defense counsel that Halbesleben merited even lesser sentences based on mitigating factors. Therefore, the prosecutor did not impliedly disavow the sentencing recommendation through her vigorous argument of the facts of Halbesleben's crimes and, thus, did not breach the plea agreement.

Halbesleben next contends that, even if the prosecutor's vigorous argument served the purpose of rebutting defense counsel's argument for lesser sentences, the prosecutor's argument was "overkill." She alleges that the argument "far exceeded anything even remotely necessary to ensure . . . a penitentiary sentence given the circumstances of this case." Beyond this bare assertion, Halbesleben provides no other argument or authority for this proposition. Furthermore, we disagree with Halbesleben's conclusion. As stated above, defense counsel had already indicated an intention to seek lesser sentences. When the prosecutor began her argument, she had to dissuade the district court from any downward deviation from the recommended sentences in light of defense counsel's impending argument. Her vigorous argument and description of the hard facts of this case and their impact on the lives of Halbesleben's children justified her later statement to the district court that lesser sentences would depreciate the gravity of the crimes and not serve the necessary goal of protecting society. The prosecutor even argued this while encouraging the district court to follow the recommendation. As noted previously, the prosecutor gave no indication of an ulterior motive to seek harsher sentences and the district court's discretionary decision to deviate from the recommendation in favor of harsher penalties does not prove the existence of one. Therefore, the prosecutor's vigorous argument detailing the difficult facts of the case and the effect on the lives of the children did not constitute a breach of the plea agreement.

**B.      Excessive Sentences and Rule 35 Reduction of Sentences**

Halbesleben argues that her consecutive sentences of ten years, with minimum periods of confinement of three years, are excessive because she did not have an extensive criminal history and she did not behave abhorrently while incarcerated. Additionally, Halbesleben argues that the district court abused its discretion by denying her Rule 35 motion to reduce her sentences because it did not understand the correct legal standards applicable to its analysis. The state responds that Halbesleben's argument that the district court failed to understand the correct legal standards applicable to its Rule 35 analysis is unsupported by adequate argument or authority. Additionally, the state responds that Halbesleben has failed to show that her sentences are excessive.

**1.      Excessive sentences**

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal,

the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In this case, the maximum penalty allowed by statute is a term of ten years with fines for each count. As noted above, the district court sentenced Halbesleben to a term of ten years, with a minimum period of confinement of three years, for each count. So long as the sentence is within the statutory limits, the appellant must show that the trial court, when imposing the sentence, clearly abused its discretion. *State v. Farwell*, 144 Idaho 732, 736, 170 P.3d 397, 401 (2007). A sentence will only be set aside when reasonable minds could not differ as to the excessiveness of the sentence. *Id.* To prevail, the appellant must establish that, under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment. *Id.* These objectives are the protection of society, deterrence of the individual and the public generally, the possibility of rehabilitation, and punishment or retribution for wrongdoing. *Id.*

At the sentencing hearing, the district court articulated its reasons for the upward deviation from the sentencing recommendation. The district court noted its grave concern regarding the terrible neglect and abuse suffered by the children over a long period of time and Halbesleben's utter lack of concern for their welfare. The district court also expressed its apprehension over Halbesleben's lack of candidness with the court and investigators, as well as her lack of insight, especially regarding her belief that her drug use was not affecting her parenting. While the district court acknowledged that Halbesleben might feel a level of remorse,

she had opportunities over many years to take action to improve the situation of her children and did not do so. Additionally, while her husband may have been controlling and treated her like chattel, that did not deprive her of her choice to provide her children with the fundamentals of life--of which she deprived them.

Next, the district court considered the objectives to be served in the imposition of Halbsleben's sentences, stating:

> The court, in fashioning the sentence in this case, looks at, certainly, the circumstances and the facts of this offense. We look at the very nature of this crime. And this is a crime in which children -- innocent children through your inaction and, on occasion, your action -- are permanently scarred for the rest of their lives. . . . And it was your duty and obligation as a parent to give them a fair opportunity. I cannot escape, then, looking at the nature and circumstances of this crime.
> You're not a career criminal. . . . There is not a history here of a prior felony . . . as there was with your ex-husband.
> Deterrent to others in the community. I'm not going to say that the sentence that I impose will be made public to every person that's out there that's not caring for their children in a proper way.
> Deterrent to you. Yes, I think that that's a fair consideration in this respect. I have concluded that you knew better, and you took no action.
> But more than any other factor here: the seriousness of this crime. Children, in this great nation with all of the resources that are available, should not have had to go through what these children went through. No matter how you spin it, these children were entitled to better -- better parenting, love, nurturing -- and you blatantly ignored that responsibility. The seriousness of this crime cannot be overlooked by this court.

The district court also observed some mitigating factors. It noted that the existence of programming potentially available for Halbesleben would not be a significant factor in its consideration. The district court found that Halbesleben's codependence with her husband did not excuse or justify her conduct because she had ample opportunities to make choices for her children and failed to do so. Furthermore, the district court found that, because of her actions, her children would never be fully compensated. Then the district court stated:

> I commented earlier that a factor that I am looking at is that overall you've led a law-abiding life other than for these very, very serious offenses that you're here before this court on.
> Will these circumstances re-occur? Granted, your children's -- your rights to your children have been terminated by another judge. And, to my knowledge, you're incapable in having children so the court can and will factor that into consideration.

The facts of this case are extraordinary. Our review of the record reveals a severe degree of abuse and neglect inflicted on Halbesleben's children over a long period of time. The serious nature of these crimes merits a harsh penalty. While the district court acknowledged Halbesleben's relatively sparse criminal history, the record in this case does not reveal that she is a person of high moral character who simply acted innocently or ignorantly. Furthermore, there is a strong interest to protect the public, especially those younger members of our society who cannot adequately protect themselves, from the type of conduct underlying the present charges and those who perpetrate these unnatural acts devoid of basic parental affection. This estimation is in accord with the district court's evaluation of Halbesleben's crimes. The district court also adequately considered the sentencing objectives of specific and general deterrence, possible rehabilitation, and retribution or punishment. The district court had the discretion to give greater weight to certain of these factors, which it did in this case. The consecutive sentences it ultimately imposed upon Halbesleben are adequate to protect these societal interests and further the sentencing objectives. Thus, having thoroughly reviewed the record in this case, we cannot say that the district court abused its discretion.

### 2. Rule 35 motion

A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). An appeal from a denial of a Rule 35 motion cannot be used as a vehicle to review the underlying sentence absent the presentation of new information. *Id.* In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1997); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

In Halbesleben's Rule 35 motion, she argued that the district court should reduce her sentences based upon the extent of the plea negotiations, the avoidance of the trauma and expense of trial for the children and the state, the difficulty that failure to follow the plea

agreement would create for future plea negotiations, and the state's determination that the recommended sentences were adequate. Additionally, Halbesleben argued various sentencing factors as well as parity between her sentences and her husband's because he received his recommended sentence of a term of thirty years, with a minimum period of confinement of fifteen years. Arguably, even though not all of this information was specifically mentioned by trial counsel at the sentencing hearing, Halbesleben's motion presented no new information for the district court to consider in reducing her sentences. However, even granting Halbesleben the benefit of the doubt that this information was new to the district court, based on our review we conclude that no abuse of discretion has been shown.

Regardless of the extent of the plea negotiations or whether the state believed the recommendation to be adequate, the district court was not required to follow the recommendation. The only authority which Halbesleben now cites in support of her argument that the district court misunderstood the role of the plea bargain in the criminal justice system is *Schoger v. State*, ___ Idaho ___, ___ P.3d ___ (Ct. App. 2008), *review granted* (Dec. 10, 2008). As review is pending by the Supreme Court, *Schoger* is not authoritative. Even if it were, *Schoger* does not require a district court to accept a recommended sentence.[2] Rather, the case addressed the issue of a trial court's discretion in rejecting a guilty plea offered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). Likewise, the district court was not required to accept the recommended sentences because the plea saved the victims from the rigors and trauma of trial or saved the state time and money. Furthermore, the district court was not required to consider the potential chilling effect that its decision to deviate from the sentencing recommendation could have on future plea negotiations. It is already well-understood that district courts are not required to accept sentencing recommendations and, therefore, a district court exercising its discretion not to do so is not altogether unforeseeable when negotiating a plea agreement. Concerning Halbesleben's arguments regarding the sentencing factors of

---

[2]     Halbesleben then attempts to argue that her plea was not knowing and voluntary because, while she knew that the district court did not have to follow the recommendation, she did not know that the court may not even consider it. This appeal does not concern the voluntariness of Halbesleben's plea and, therefore, we need not address this argument. Even were we to address it, the argument has little merit. The district court did consider the plea agreement's recommended sentences, it simply chose not to follow it.

13

protecting society, deterrence and rehabilitation, these arguments were all presented and properly considered by the district court at the sentencing hearing. We need not address them further.

Halbesleben argues that the district court abused its discretion by allegedly refusing to consider the sentence imposed upon her husband. She argues that the district court incorrectly labeled her argument as disingenuous. Halbesleben's argument is belied by the record. At the sentencing hearing, the district court stated:

> This is a case in which the court could impose up to 20 years in the state penitentiary with fines. The court imposed a 15-year sentence that was fixed and a 15-year indeterminate sentence to your former husband. And as was pointed out by your counsel and what the court certainly took into consideration is that Thomas Halbesleben had been in the criminal justice system on an earlier time and date for a charge very similar, if not identical, to the charge that brought him before this court. And that's certainly a -- was an aggravating factor that the court looked at in sentencing.
>
> That being said, I concur with the state in terms of their description of the terrible neglect and abuse of these children over a long period of time. And many children. This was gross neglect.

The district court was aware of and considered the sentence of Halbesleben's husband and the aggravating factors that led to a harsher penalty for him than was warranted in her case. Halbesleben's argument in her Rule 35 motion was not that the district court should consider her husband's sentence as compared with her own. Rather she argued that the district court should consider that her husband received the sentence recommended by his plea agreement and, therefore, so should she. This argument, as the district court held, is irrelevant. Halbesleben now offers no authority for the proposition that a district court that imposes a sentence recommended by a plea agreement upon one defendant must also follow the recommended sentence of a separate plea agreement for another defendant charged with crimes arising out of the same conduct. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

Halbesleben also argues that because the district court knew the difficult facts of this case before it was presented with the plea bargain at the change of plea hearing, it should not have accepted the guilty plea if it felt that the recommended sentences were inappropriate. Halbesleben offers little argument other than this bare assertion and offers no authority in support of this proposition. We note that, if the parties wanted the district court to be bound by their sentencing recommendations, I.C.R. 11 provides a mechanism to do so. Additionally,

14

Halbesleben argues that the district court should have reduced her sentences pursuant to her Rule 35 motion because they were unreasonably hash. We have concluded above that Halbesleben's sentences are not unreasonably excessive. Therefore, we do not further address this argument. The district court did not abuse its discretion when it denied Halbesleben's Rule 35 motion for a reduction of her sentences.

## III.

## CONCLUSION

The prosecutor's argument at the sentencing hearing did not undermine the sentencing recommendation and did not breach the plea agreement. Halbesleben's sentences are not excessive. The district court did not abuse its discretion by denying Halbesleben's Rule 35 motion for a reduction of her sentences. Therefore, Halbesleben's judgment of conviction and sentences for two counts of felony injury to a child, as well as the district court's order denying Halbesleben's Rule 35 motion for a reduction of her sentences, are affirmed.

Judge GRATTON, **CONCURS.**

Judge GUTIERREZ, **DISSENTING**

I respectfully dissent. The lengthy argument presented at sentencing by the state, with repeated vigorous emphasis on the horrendous abuse and neglect suffered by the children, can only be viewed as disavowing the plea agreement sentencing recommendation. Therefore, I would vacate the sentence and remand for resentencing before a different judge.