**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39041**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 32 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 8, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MICHAEL S. STOCKS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Franklin County. Hon. Mitchell W. Brown, District Judge.

Judgment of conviction and sentence of ten years, with two years fixed, for lewd conduct with a minor, <u>affirmed</u>.

May, Rammell & Thompson, Chtd., Pocatello, for appellant. Aaron N. Thompson argued.

Hon. Lawrence G. Wasden, Attorney General; Jason M. Gray, Deputy Attorney General, Boise, for respondent. Jason M. Gray argued.

———————————————————————

SCHWARTZMAN, Judge Pro Tem

Michael S. Stocks appeals from his conviction for lewd conduct with a minor under sixteen entered upon his guilty plea. He contends that the prosecutor breached the plea agreement at sentencing by arguing matters inconsistent with his agreement to recommend a sentence of retained jurisdiction. We affirm.

**I.**

**ANALYSIS**

Stocks was charged by information with three counts of lewd conduct with a minor under sixteen in violation of Idaho Code § 18-1508. It was alleged that Stocks had manual-genital, genital-genital, and oral-genital sexual contact with his nine-year-old niece. Pursuant to a plea agreement, Stocks pleaded guilty to the lewd conduct by manual-genital contact charge and the remaining charges were dismissed. The written plea agreement further provided that "the State

1

agrees, at sentencing, not to recommend any harsher sentence than recommended in the Pre-Sentence Investigation." Stocks was free to "argue any sentence the defense deems just."

The PSI report recommended retained jurisdiction. At sentencing, Stocks argued for a lesser sentence than recommended by the PSI investigator. Specifically, he requested a suspended sentence and probation. He supported this request by noting numerous letters of support written by Stocks' family, friends, and acquaintances describing Stocks as honest, trustworthy, humble, charitable, and as a man of integrity with strong moral character and repute. Stocks also said that while he had a serious "problem," he was a first-time offender with no prior criminal record, an actively religious man in his church, and had been fully compliant with the conditions of his pretrial release. Stocks also argued that it was a positive that he had been "extremely candid" in his interview with a psychosexual evaluator and that the evaluator was of the opinion that Stocks "does not require incarceration for community protection purposes at this time."

The prosecutor, in accord with the plea agreement, expressly recommended a period of retained jurisdiction. He prefaced his recommendation, however, by referencing a number of matters of concern contained in the record, including Stocks' own statements regarding the details of his acts of molestation, the victim's willing participation in those acts, the existence of a prior victim and Stocks' use of the Internet to view child pornography. The prosecutor did so, in his express words, "with respect to the defendant's argument for probation." The prosecutor first noted that none of the persons writing letters in support of Stocks made any reference to Stocks' molestation of the victim, that "there is a dark side to Mr. Stocks" and that there was a "dark underbelly to this man on the exterior with adults, young people and children puts on a façade of being someone who is of high moral character of great integrity." The prosecutor then read from Stocks' personal version of the events set forth in the PSI, where the defendant said that during numerous acts of molestation occurring over about a one-year period when he was twenty-five and the victim nine years old, the victim told him that "she did like it" when he touched her, that "she didn't seem bothered by it at all," that she took actions that "made me think that she liked what we were doing and wanted it to continue," and that he had a "great relationship" with the child. The prosecutor also quoted from the psychosexual evaluator's report recounting that Stocks admitted to viewing child pornography on thousands of occasions and preferred "looking at seven-to-ten-year-old females who were posing nude" while he

2

masturbated, that Stocks admitted to molesting a ten-year-old girl when he was fifteen, that the evaluator was of the view that Stocks "holds his victim responsible because she wanted and liked the sex play that was happening," that Stocks was a "high-moderate" risk to reoffend and that "Stocks shows some problems with anger. He feels rather cynical at this time and feels unjustly treated to some extent in the current case." The prosecutor's concluding remarks were as follows: "[B]ased upon all of that and recommendations contained in the presentence investigation report the State is going to ask that the Court impose an underlying sentence in its discretion and retain jurisdiction in this case with a recommendation for the therapeutic community" because "that would fit with [the evaluator's] estimation that he needs a heavily intensely supervised aggressive sex offender caseload."

Before imposing sentence, the district court said:

This is the type of conduct that I feel cries out for a [period] of incarceration. I cannot and will not impose a sentence of [probation.] I understand from [the evaluator's] report that he does not believe that incarceration is necessary in this particular instance to protect society in this matter . . . I cannot and will not draw that same conclusion.

Thereafter, the district court imposed a unified term of incarceration of ten years, with two years fixed, with no retained jurisdiction or probation.

On appeal, Stocks asserts that the prosecutor, through his arguments at sentencing, impliedly breached the plea agreement term requiring him to recommend a sentence of retained jurisdiction. The following standards apply to such a claim:

It is well established that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427, 433 (1971). This principle is derived from the Due Process Clause and the fundamental rule that, to be valid, a guilty plea must be both voluntary and intelligent. *Mabry v. Johnson*, 467 U.S. 504, 508-09, 104 S. Ct. 2543, 2546-47, 81 L. Ed. 2d 437, 442-43 (1984); *State v. Rutherford*, 107 Idaho 910, 913, 693 P.2d 1112, 1115 (Ct. App. 1985). If the prosecution has breached its promise given in a plea agreement, whether that breach was intentional or inadvertent, it cannot be said that the defendant's plea was knowing and voluntary, for the defendant has been led to plead guilty on a false premise. *State v. Jones*, 139 Idaho 299, 301-02, 77 P.3d 988, 990-91 (Ct. App. 2003). In such event, the defendant will be entitled to relief. *State v. Fuhriman*, 137 Idaho 741, 744, 52 P.3d 886, 889 (Ct. App. 2002). As a remedy, the court may order specific performance of the agreement or may permit the

3

defendant to withdraw the guilty plea. *Santobello*, 404 U.S. at 263, 92 S. Ct. at 499, 30 L. Ed. 2d at 433; *Jones*, 139 Idaho at 303, 77 P.3d at 991.

The prosecution's obligation to recommend a sentence promised in a plea agreement does not carry with it the obligation to make the recommendation enthusiastically. *United States v. Benchimol*, 471 U.S. 453, 455, 105 S. Ct. 2103, 2104, 85 L. Ed. 2d 462, 465 (1985); *Jones*, 139 Idaho at 302, 77 P.3d at 991. A prosecutor may not circumvent a plea agreement, however, through words or actions that convey a reservation about a promised recommendation, nor may a prosecutor impliedly disavow the recommendation as something that the prosecutor no longer supports. *Jones*, 139 Idaho at 302, 77 P.3d at 991. Although prosecutors need not use any particular form of expression in recommending an agreed sentence, their overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse. *Id.*

*State v. Halbesleben*, 147 Idaho 161, 165, 206 P.3d 867, 871 (Ct. App. 2009).

However, Stocks *did not object* to any of the prosecutor's arguments when they were made and for this reason he must first establish that his claim is reviewable under the fundamental error doctrine. An Idaho appellate court generally will not consider an assertion of error on appeal unless the issue was preserved in the trial court proceedings. *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010); *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). This rule encourages parties to timely raise objections in order to give the trial court an opportunity to consider and resolve or avoid the mistake. *Puckett v. United States*, 556 U.S. 129, 134 (2009). Requiring a contemporaneous objection prevents the litigant from sandbagging the court; i.e., "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* Nevertheless, a claimed trial error in a criminal case that was not followed by a contemporaneous objection may be reviewed on appeal if it amounts to fundamental error. To establish reversible fundamental error:

(1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Perry*, 150 Idaho at 226, 245 P.3d at 978 (footnote omitted).

Here, the alleged error occurred during a proceeding that followed a guilty plea. The three-part test for unobjected-to fundamental error from *Perry* applies to such criminal

4

proceedings, including a claim of prosecutorial breach of a plea agreement at sentencing. *State v. Gomez*, ___ Idaho ___, ___, ___ P.3d ___, ___ (Mar. 2, 2012). *See also State v. Longest,* 149 Idaho 782, 784, 241 P.3d 955, 957 (2010) (applying *Perry* to a claim of prosecutorial breach of a plea agreement at a rider review hearing). All three elements of the standard articulated in *Perry* must be satisfied for Stocks' claim to be appealable to this Court. *Gomez*, ___ Idaho at ___, ___ P.3d at ____.

We conclude, for a number of reasons, that Stocks has failed to establish a clear violation of his due process rights. First, the requirement that a violation be "clear" all but definitively defeats a claim of an implied violation of the type that Stocks advances here. Second, the information recounted by the prosecutor is relevant to both the underlying sentence to be imposed and to the length of a term of probation, had the district court decided to grant probation, as the prosecutor made no agreement to stand silent or to limit his ability to persuade the court that either period of time be significant. In similar circumstances, we have previously found no breach of a plea agreement. *See State v. Brooke*, 134 Idaho 807, 810, 10 P.3d 756, 759 (Ct. App. 2000). And third, in *Halbesleben*, 147 Idaho at 168, 206 P.3d at 874, we rejected the defendant's claim of implied violation of a plea agreement based, in part, on the reasoning that "[t]he prosecutor's vigorous argument did not undermine the sentencing recommendation but, rather, buttressed it against any argument from defense counsel that Halbesleben merited even lesser sentences based on mitigating factors." That is also what occurred here, as defense counsel argued for straight probation based on mitigating circumstances, followed by the prosecutor expressly stating that his argument was made "with respect to the defendant's argument for probation."

Because the record does not demonstrate a clear violation of an unwaived constitutional right, Stocks' claim of error is not reviewable as fundamental error if, indeed, any error occurred at all. Accordingly, the judgment of conviction and sentence are affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**

5