IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 45759

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: February 6, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| COLTYNE DANIELS CONLEY, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Judgment of conviction and sentence for aggravated assault, affirmed.

The Cox Law Firm, PLLC; Edwina E. Wager, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Coltyne Daniels Conley appeals from the judgment of conviction and sentence entered upon his guilty plea to aggravated assault. Conley argues that the prosecutor breached the plea agreement by disavowing the sentencing recommendation it agreed to make and that the district court abused its discretion when imposing Conley's sentence. For the reasons set forth below, we affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Conley with rape, Idaho Code § 18-6101. B.H., a longtime friend of Conley and his two roommates, reported that Conley placed his penis in her mouth, and had sex with her while she was in and out of consciousness. The interaction occurred at Conley's residence after B.H. had been drinking and subsequently went to sleep on the couch. During the course of the interaction, Conley placed a pillow over B.H.'s face making it difficult for her to

1

breathe. The day after the encounter, B.H. reported the incident to police. During an interview with a law enforcement officer, Conley admitted that he placed his penis in B.H.'s mouth while she was still unconscious.

In exchange for Conley's guilty plea, the State agreed to file an amended information charging Conley with one count of aggravated assault, I.C. §§ 18-901(b) and 18-905(b), for placing a pillow over B.H's face. During the plea negotiations, the parties agreed to recommend probation if Conley obtained a psychosexual evaluation by a specified evaluator and was found to be at a low-risk to re-offend. The low-risk classification was contingent on Conley participating in treatment. Additionally, the State was free to recommend any number of days in jail, but agreed to recommend that Conley have the option of work release for any jail time in excess of thirty days. The parties entered into a plea agreement reflecting the same. Conley underwent a psychosexual evaluation and was found to be a low-risk to re-offend.

At the sentencing hearing, the State recommended that the district court follow the plea agreement, impose "an underlying of three plus two for five," and, in addition, impose a sentence of 365 days in jail with the first thirty days to include no work release. During his argument, the prosecutor made various statements about Conley's support letters and the impact of the incident on B.H.:

> Your Honor, the letters written by his mother and stepfather are offensive and victim--blaming. And while we can't hold what they said against the defendant, they did get their incorrect version of events from somewhere and that likely came from him. He has told a lot of people untrue versions of what happened, which further victimizes [B.H.].

The prosecutor indicated numerous times that Conley did not accept responsibility for the crime and referred to Conley's apology as "nothing more than just blatant victim blaming" and "just false." The prosecutor argued that,

> the psychosexual is also helpful. He is found at the upper end of low risk, but that's assuming he'll do his treatment. And the one problem that I already see is that one cannot truly be treated if they can't accept that they have done anything wrong.
> In both the PSI and his recent actions show that he doesn't feel that he has done anything wrong.

In addition, the prosecutor stated that it was "incredibly troubling" that during Conley's psychosexual evaluation it was reported that "The examinee stated he believes she was

2

consenting." The prosecutor argued, "If that is true, nobody would be safe from him, so I hope he is simply lying to make himself look good."

Before beginning argument, Conley's counsel objected to the entirety of the prosecutor's argument on the basis that although the prosecutor recommended that the district court follow the plea agreement, it impliedly breached the plea agreement by arguing against the recommendation. Specifically, Conley's counsel noted concern with the prosecutor's characterization that Conley had continually harassed the victim throughout the case. Counsel also expressed concern with the prosecutor's characterization of Conley and his letters of support, as well as the prosecutor's assertion that Conley should be punished for the defense team's investigation of the case. After pronouncing sentencing, the district court overruled Conley's objection.[1] The district court sentenced Conley to five years with one year determinate but declined to suspend the sentence and place Conley on probation. Conley timely appeals.

## II.

## ANALYSIS

Conley contends that the prosecutor impliedly breached the plea agreement and the district court abused its sentencing discretion.

### A.    Plea Agreement

Conley argues the prosecutor's overall conduct at sentencing impliedly disavowed the recommendation required by the plea agreement, thus constructively breaching the plea agreement. When there has been a contemporaneous objection to an alleged breach of a plea agreement, we first determine factually if the plea agreement was breached. *See State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). If so, we determine whether the breach was harmless. *See id.*

It is well established that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971). Like a

---

[1]    In overruling Conley's objection to the State's sentencing argument, the district court addressed Conley's concern with the State's jail recommendation by stating, "[I]f there is not a cap on the amount of jail the prosecutor can recommend, the prosecutor can recommend anything up to a year in jail. . . . [S]o I do not consider that request to be some sort of breach of the plea agreement . . . ." The argument raised by Conley on appeal, that the prosecutor disavowed the plea agreement by impliedly arguing against probation, was not addressed in the district court.

3

contract, a valid plea agreement binds the State to perform the promised obligations. *Puckett v. United States*, 556 U.S. 129, 137 (2009). The State's failure to comply with its obligations constitutes a breach of the agreement and entitles the defendant to appropriate relief. *Id*. As a remedy, the court may order specific performance of the agreement or may permit the defendant to withdraw the guilty plea. *Santobello*, 404 U.S. at 263; *State v. Jones*, 139 Idaho 299, 302, 77 P.3d 988, 991 (Ct. App. 2003).

The prosecution's obligation to recommend a sentence promised in a plea agreement does not carry with it the obligation to make the recommendation enthusiastically. *United States v. Benchimol*, 471 U.S. 453, 455 (1985); *Jones*, 139 Idaho at 302, 77 P.3d at 991. A prosecutor may not circumvent a plea agreement through words or actions that convey a reservation about a promised recommendation and may not impliedly disavow the recommendation as a position no longer supported by the prosecutor. *Jones*, 139 Idaho at 302, 77 P.3d at 991. Although prosecutors need not use any particular form of expression in recommending an agreed sentence, their overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse. *Id.*

First, Conley argues that the prosecutor's failure to mention the word probation during his sentencing argument contributed to the State disavowing the plea agreement. We do not find this argument persuasive. On two occasions, the prosecutor requested that the district court follow the plea agreement; the plea agreement stipulated that the parties agreed to recommend probation. In addition, the prosecutor referred to its recommendation for a five-year unified sentence as an "underlying" sentence, thereby implying a recommendation of probation. In other words, a term of probation must come from the suspension of an underlying sentence. Next, Conley assigns error to a variety of the prosecutor's statements throughout his sentencing argument, some of which are described above. He argues that "the only reasonable interpretation of the prosecutor's statements is that Mr. Conley posed an utmost threat to society, not that he was an appropriate candidate for probation." In this case, the prosecutor's argument was decidedly less than enthusiastic in terms of the recommendation. However, the agreement was not disavowed and the State asked for no more than agreed. The prosecutor was allowed to point out issues relative to the victim, mitigation, and the defendant in support of the maximum sentence to which the State had agreed. In light of the underlying facts and the anticipated request of defense counsel, moreover, any breach was harmless.

4

Conley argues that the breach was not harmless because "the sentence imposed by the district court was clearly influenced by the prosecutor's improper argument." Where a breach is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the sentence imposed would have been the same absent the breach. *See Perry*, 150 Idaho at 227, 245 P.3d at 979. The State argues that "a review of the record, and particularly of the district court's comments at the sentencing hearing, reveal, beyond a reasonable doubt, that the court would have imposed the same sentence regardless of any breach." We agree with the State.

The district court recognized that it was the State's obligation under the plea agreement to recommend probation. It stated, "the defendant pleaded guilty to aggravated assault. He entered that plea under a plea agreement that called for the state to cap its recommendation at a probation sentence provided that the psychosexual evaluation returned an indication the defendant was a low risk to re-offend, which it did." While understanding that the State was bound to recommend probation, the district court acted within its authority when it deviated upward from the parties' recommendation. *See State v. Halbesleben*, 147 Idaho 161, 171, 206 P.3d 867, 877 (Ct. App. 2009). In doing so, the district court considered all of the sentencing objectives stating, "I'm well aware of the four objectives of criminal sentencing that Idaho law directs me to consider in every ca[s]e, first and foremost among them is protection of the community, also rehabilitation, deterrence, and punishment." It also considered the facts underlying the original rape charge, "the theory of rape being that the victim was too intoxicated to resist." Furthermore, the district court informed Conley before he chose to plead guilty that it would take the underlying facts into consideration for sentencing. The court was free to do so. *See State v. Ott*, 102 Idaho 169, 627 P.2d 798 (1981). Specifically, the district court said that it was going to consider Conley's own words on various recordings, one of which

> included statements by Mr. Conley to investigating officers that this incident, this sexual contact on this occasion, was initiated by Mr. Conley, inserting his penis in [B.H.'s] mouth while she was either asleep or slightly asleep. This is what he said on the tape. So I indicated I was going to consider that. I'm going to consider that.

It also expressly stated that it would consider the act that Conley ultimately pled guilty to, which was placing a pillow over B.H.'s face, as well as B.H.'s victim impact statement.

Most of the prosecutor's assertions that Conley takes issue with were either expressly rejected or expressly not considered by the district court. For example, the district court

5

expressly stated that it would not consider any implication by the State that the defense's litigation tactics were attributed to Conley or somehow showed that Conley did not accept responsibility for his actions. Moreover, the district court expressed disagreement with any implication by the State that Conley had done anything aimed at harassing B.H. during the course of the litigation. Furthermore, before pronouncing sentence, the district court stated,

> Idaho Code Section 19-2521 directs me to consider a number of factors in determining whether a probation sentence or instead a prison sentence is appropriate. I considered those factors. One of those factors is whether a lesser sentence than prison would depreciate the seriousness of the offense. In this case I conclude that it would.

Finally, when overruling Conley's objection to the prosecutor's argument, the district court explained that the State's ultimate recommendation of 365 days in jail would have no bearing on its sentencing determination,

> In the end, [the State's] . . . request doesn't matter. It doesn't have an impact on my decision. This is the result that I consider to be appropriate in light of the nature of the case and the charges, and so it is what it is.

The district court engaged in a well-reasoned analysis of the sentencing factors independent of the State's sentencing argument. Therefore, we conclude that there was no breach and, even so, the alleged breach was harmless.

**B.      Sentencing**

Conley argues that the sentence imposed by the district court was an abuse of discretion because the sentence is excessive in light of mitigating factors. The State argues that the district court appropriately considered relevant mitigating factors and thus it did not abuse its discretion. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed

6

an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In this case, the maximum period of confinement allowed by statute for aggravated assault is five years imprisonment. I.C. § 18-906. The district court sentenced Conley to a term of five years with one year determinate. The sentence imposed by the district court is not unreasonable upon review of the facts of the case. As noted above, the district court considered the sentencing objectives, the facts underlying the original charge, the facts pertaining to the charge Conley pled guilty to, and the impact of the crime on B.H. In addition, it reviewed the presentence investigation report and the psychosexual evaluation. The district court also expressly considered mitigating factors such as Conley's limited criminal history, strong support system, and the psychosexual evaluator's conclusion that he is a low-risk to reoffend. However, the district court, after citing to I.C. § 19-2521, determined that a sentence other than prison would "depreciate the seriousness of the offense." The district court articulated its reasons for deviating from the sentencing recommendation. Therefore, we conclude that the sentence that was imposed on Conley is adequate to protect society and further the sentencing objectives; thus, the district court did not abuse its discretion in imposing Conley's sentence.

## III.

## CONCLUSION

The prosecution did not breach the plea agreement and, additionally, the breach as asserted by Conley was harmless. In addition, the district court did not abuse its discretion in imposing Conley's sentence. Therefore, Conley's judgment of conviction and sentence for aggravated assault is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

7