170 P.3d 387

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Stanley Elliott OLIVER, Defendant–Appellant.**

**No. 33899.**

Supreme Court of Idaho, Boise, September 2007 Term.

Oct. 17, 2007.

**724**

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Justin Curtis argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Thomas Tharp argued.

EISMANN, Chief Justice.

The Defendant appeals his felony conviction of driving while under the influence and his sentence of five years in the custody of the board of correction, with one year fixed. He contends there was insufficient evidence to support the jury's verdict of guilty and that his sentence constitutes an abuse of discretion. We affirm both the conviction and the sentence.

## I. FACTS AND PROCEDURAL HISTORY

Following a low-impact vehicle collision during rush-hour traffic on Chinden Boulevard in Garden City, the defendant Stanley Oliver was arrested and charged with felony driving while under the influence of alcohol and/or drugs. He entered a plea of not guilty, and the jury found him guilty. Because Oliver challenges the sufficiency of the evidence to support that verdict, the relevant facts will be presented in detail below. The district court sentenced Oliver to five years in the custody of the Idaho Board of Correction, with one year fixed and the remaining four years indeterminate. The court also suspended Oliver's driving privileges for five years commencing on the date of his release from confinement. Oliver timely appealed.

■ The appeal was initially heard by the Idaho Court of Appeals, which affirmed the district court in an unpublished opinion. We then granted Oliver's petition for review. In cases that come before this Court on a petition for review of a Court of Appeals deci-sion, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court. *Head v. State*, 137 Idaho 1, 43 P.3d 760 (2002).

## II. ISSUES ON APPEAL

1. Is there substantial, competent evidence to support the jury's verdict?

2. Did the district court abuse its discretion when sentencing the Defendant?

## III. ANALYSIS

### A. Is There Substantial, Competent Evidence to Support the Jury's Verdict?

■ "This Court will not overturn a judgment of conviction, entered upon a jury verdict, where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt." *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003). We view the evidence in the light most favorable to the prosecution, and we do not substitute our judgment for that of the jury regarding the credibility of the witnesses, the weight of the evidence, and the reasonable inferences to be drawn from the evidence. *Id.*

■ Idaho Code § 18–8004(1)(a) provides, "It is unlawful for any person who is under the influence of . . . any combination of alcohol, drugs and/or any other intoxicating substances, . . . to drive or be in actual physical control of a motor vehicle within this state." In order to be "under the influence," a person need only have consumed sufficient alcohol and drugs or other intoxicating substances "to such extent as to influence or affect his driving of the motor vehicle," *State v. Glanzman*, 69 Idaho 46, 49, 202 P.2d 407, 408 (1949), *accord State v. Gleason*, 123 Idaho 62, 844 P.2d 691 (1992). Thus, the issue is whether the jury was presented with substantial, competent evidence showing that Oliver had consumed sufficient alcohol and/or drugs to influence or affect his driving of his motor vehicle. It clearly was.

On March 4, 2004, shortly after 5:00 p.m., a Mr. Shaw was traveling west on Chinden Boulevard during heavy rush-hour traffic. Chinden Boulevard is a five-lane road, with two eastbound lanes, two westbound lanes, and a center turn lane. As Mr. Shaw was driving in the inside westbound lane, he saw a yellow Toyota pickup turn westbound onto Chinden Boulevard from an intersecting street on the north side of the boulevard. When doing so, the Toyota crossed both westbound lanes, causing Mr. Shaw to brake and slow down, and then began driving west down the center turn lane. As Mr. Shaw followed the Toyota pickup, he saw it travel about three-fourths of a block in the center turn lane, drift once into the oncoming eastbound lane, and make quick, jerky, erratic movements. He lost sight of the pickup when other vehicles merged in front of him. Suddenly, the traffic came to a stop. He thought to himself that the Toyota had probably caused an accident. When he made it to the cause of the stoppage, he saw he was correct and stopped to wait for the police in order to tell them what he had observed.

Ms. Lawrence was also driving westbound in the heavy rush-hour traffic on Chinden Boulevard. The traffic was stop and go. When the traffic in front of her slowed, she also slowed down and was hit by a vehicle from behind. As she continued moving, the vehicle hit her two more times. When she stopped, it hit her a fourth time. She looked in her rearview mirror and saw the yellow Toyota pickup behind her. Its driver, Oliver, was holding a cigarette in one hand, with that arm wrapped around the steering wheel. In his other hand, he was holding a cell phone, on which he was talking. She noticed that Oliver did not look up or do anything to indicate that he knew there had been an accident. After he finished his cigarette and stopped talking on his cell phone, Oliver put his pickup in reverse, backed up almost hitting the vehicle behind him, and then drove forward striking Ms. Lawrence's vehicle a fifth time. The impacts were low enough that there was no apparent damage to either vehicle.

Officer Furniss was the first peace officer to arrive at the accident scene. He contacted Oliver, and noticed an odor of alcohol on his breath. Oliver stated that he was stopped and that the car in front of him backed into his pickup. He later admitted that he had struck the car in front of him. He had two prescription medications in his pickup, one of which was for OxyContin. He also admitted having one beer four hours before the accident. Officer Furniss's shift was ending, so he turned the investigation over to Officer Dennis who had just arrived at the scene.

Officer Dennis performed the horizontal gaze nystagmus test on Oliver. Oliver scored six out of six, indicating intoxication. Officer Dennis then asked Oliver to perform several field sobriety tests. Because of a prior leg injury, Oliver could not do the walk-and-turn test or the one-leg-stand test. Officer Dennis asked Oliver to recite the alphabet, which he did. He also asked Oliver to count backward from ninety-five, which Oliver failed to do properly. He began counting from eighty-five. Officer Dennis arrested Oliver and transported him to the Ada County jail.

At the jail, Officer Dennis administered a breath test for alcohol concentration to Oliver. It showed an alcohol concentration in Oliver's breath of 0.03, which is below the legal limit of 0.08. Believing that Oliver's apparent intoxication was not consistent with that test result, Officer Dennis had Oliver provide a urine sample. It later tested positive for oxycodone, Phenobarbital (a barbiturate) and carbamazepine, and it screened positive for a benzodiazepine. All of these were medications that Oliver was taking pursuant to valid prescriptions.

Officer Dennis then had Detective Moore examine Oliver. Detective Moore had been trained to conduct drug recognition exams to determine whether an individual was under the influence of a drug. After examining Oliver, Detective Moore concluded that Oliver was under the influence of a central nervous system depressant and a narcotic analgesic. When examining Oliver, Detective Moore noted that Oliver had decreased motor control, decreased reaction time, and decreased ability to process appropriate responses to stimuli.

Mr. Dawson, a pharmacist, testified that OxyContin is a brand name for oxycodone. It is a narcotic analgesic that is a central nervous system depressant with mood-altering effects. It affects motor skills and can cause drowsiness, confusion, and disorientation. The effect of the drug is being in a mild stupor, which decreases reaction time to stimuli. Carbamazepine is an anti-convulsant which decreases the electrical transmission in the brain. Phenobarbital is a barbiturate typically used to treat seizure disorders. Benzodiazepine is a class of drugs typically used as anti-anxiety agents. Carbamazepine, Phenobarbital, and a benzodiazepine are all central nervous system depressants that can cause drowsiness, dizziness, and lack of coordination.

Mr. Dawson stated that when all four drugs are taken, their effects are additive. Their combined effects are greater than the effect of a therapeutic dose of only one. In addition, a small amount of alcohol will further increase the effect of each of the drugs. Oliver testified that he had drunk a sixteen-ounce can of beer.

Oliver offered testimony seeking to explain his driving pattern. He stated that his size fifteen work boots made it difficult to manipulate the small foot pedals in his Toyota pickup. He also testified that he had taken his medications at about 6:00 to 6:30 a.m., and their effects would have worn off by the time of the accident. He stated that he did not feel he was under the influence at the time of the accident. He contended that he failed the counting-backwards test because he did not understand the officer's instructions due to being distracted by the noise and lights of the passing traffic. The jury did not have to accept Oliver's explanations. *State v. Sheahan,* 139 Idaho 267, 77 P.3d 956 (2003). It was the jury's province to judge his credibility and to decide what weight, if any, to give his testimony. *Id.*

Considering Oliver's driving pattern, the drugs and alcohol in his system, the additive effects of combining the four drugs and alcohol, and the testimony of Officer Dennis and Detective Moore, there was substantial, competent testimony from which the jury could reasonably have concluded that Oliver was driving while under the influence of alcohol and/or drugs. Its verdict is supported by substantial, competent evidence.

## B. Did the District Court Abuse Its Discretion when Sentencing the Defendant?

"We review the length of a sentence under an abuse of discretion standard," *State v. Strand,* 137 Idaho 457, 460, 50 P.3d 472, 475 (2002), and when doing so we consider the defendant's entire sentence, *State v. Huffman,* 144 Idaho 201, 159 P.3d 838 (2007).[1] We presume that the fixed portion of the sentence will be the defendant's probable term of confinement. *State v. Trevino,* 132 Idaho 888, 980 P.2d 552 (1999). That is because whether or not a defendant serves longer than the fixed portion of the sentence is a matter left to the sole discretion of the parole board, and "[c]ourts cannot intrude on this discretion when fashioning a sentence nor when reviewing a sentence," *State v. Huffman,* 144 Idaho 201, 203, 159 P.3d 838, 840 (2007).

When conducting our review, "we independently review the record on appeal, having due regard for the nature of the offense, the character of the offender, and the protection of the public interest," *State v. Strand,* 137 Idaho 457, 460, 50 P.3d 472, 475 (2002). We review the record for the information that was known to the sentencing court at the time the sentence was imposed. "A sentence is reasonable if at the time of imposition it appears necessary to achieve

---

1. Prior to our opinion in *State v. Huffman,* our Court of Appeals had held that the indeterminate portion of a sentence will be examined on appeal only if the defendant shows that there are special circumstances justifying review of more than the fixed portion of the sentence. *State v. Arthur,* 2006 WL 1293060, —— Idaho App. ——, —— P.3d —— (2006). As we pointed out in *State v. Huffman,* 144 Idaho at 202, 159 P.3d at 839, "We have never held that we will not review the aggregate portion of a defendant's sentence to see if it is reasonable under the facts of the case when the sentence is appealed." A defendant challenging his or her sentence on appeal need not show special circumstances in order for the appellate court to review the entire sentence, including the indeterminate portion.

'the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to the given case.'" *State v. Lundquist,* 134 Idaho 831, 836, 11 P.3d 27, 32 (2000) (quoting from *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982)). To show an abuse of discretion, the defendant must show that the sentence, in light of the governing criteria, is excessive under any reasonable view of the facts. *State v. Strand,* 137 Idaho 457, 460, 50 P.3d 472, 475 (2002).

The district court sentenced Oliver to five years in the custody of the Idaho Board of Correction, with one year fixed and four years indeterminate. Oliver challenges the indeterminate portion of his sentence. He asserts "that this Court should find that the four year indeterminate sentence imposed by the district court is excessive in light of mitigating circumstances present in his case."

Under our standard of review, we assume that Oliver will be paroled after serving one year of incarceration. Once he is paroled, the commission for pardons and parole will specify in writing the conditions of his parole. I.C. § 20–228; IDAPA 50.01.01.250. Oliver apparently contends that it is unreasonable for him to be on parole supervision for four years after he is released from incarceration.

In support of his argument that the indeterminate portion of his sentence is unreasonable, Oliver states: that at the time of sentencing he was fifty-eight years old; that when he was younger he had been drafted into the Army, served two years, and was honorably discharged; that he suffers from several physical impairments and mental illness; that this is his first felony; that his only other criminal convictions are two offenses of driving while under the influence in 2000; that he has a serious alcohol problem; and that he has been in treatment for alcoholism and is eligible for further treatment at the Veteran's Administration. These factors do not indicate any abuse of discretion by the district court. In fact, they show the proper exercise of discretion.

Oliver admittedly has "a serious alcohol problem." He was first arrested for driving while under the influence on November 18, 2000. A breath test showed an alcohol concentration of .21/.20. His second arrest occurred on November 24, 2000, when the pickup he was driving slammed into a vehicle stopped at a traffic light. According to the medical personnel, Oliver was very intoxicated, but he refused to submit to a blood alcohol test. On June 20, 2001, he pled guilty to both charges and was sentenced. He did not stop consuming alcohol. His medical records from the Veterans Administration show that on July 12, 2004, "Pt states he 'went on a bender' yesterday. Was drinking wine primarily, took his 'heart meds: captopril and metoprolol, double dose the night before' because he knew he would be drinking." The records show he was hospitalized for alcohol detoxification and a possible heart attack. The heart attack was ruled out, but he was treated for alcohol withdrawal.

The record shows that Oliver is an alcoholic. This is his third conviction for driving while under the influence. Four months after he was arrested and charged in this case, he "went on a bender" and was hospitalized for alcohol detoxification. A four-year period of parole supervision after Oliver's release from incarceration is clearly reasonable not only for the protection of the public, but for his own protection. We affirm the district court's sentence.

## IV. CONCLUSION

We affirm the jury verdict and Oliver's sentence.

Justices BURDICK, J. JONES, W. JONES and TROUT, J. Pro Tem concur.