**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38929**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2012 Opinion No. 63** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: December 3, 2012** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| KEVIN CHRISTIAN OVERLINE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction and sentences for lewd conduct with a minor child, sexual abuse of a minor, and possession of sexually exploitative material, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Kevin Christian Overline appeals from his judgment of conviction for several sex offenses against a child. The principal issue that we must address is whether defense counsel may waive a defendant's constitutional right to a public trial by consenting to closure of a portion of the trial, or whether such a waiver may be made only by the defendant personally. We hold that this constitutional right may be waived by consent from counsel and therefore affirm the judgment of conviction.

**I.**

**BACKGROUND**

Overline was charged with lewd conduct with a minor child under sixteen, Idaho Code § 18-1508, sexual abuse of a minor child under sixteen, I.C. § 18-1506, and possession of

sexually exploitative material, I.C. § 18-1507A,[1] for acts committed against his girlfriend's ten-year-old daughter. The charges arose from Overline's creation and possession of explicit photographs of the child's body. At a pretrial conference, the court inquired about the type of exploitative material the State intended to present, and the prosecutor responded that it would be photographs. The following exchange then occurred:

> [PROSECUTOR]: And I'm wondering if I can just publish [the exhibits] personally to the jury or we can clear the courtroom out since it is a young victim.
> THE COURT: I--I would probably clear--clear the area. I think that would make more sense. Is that okay with you?
> [DEFENSE COUNSEL]: That's fine.
> THE COURT: Okay. But this isn't like videos or anything like that? It's just photographs?
> [PROSECUTOR]: Photographs.
> THE COURT: And it's up to you whether you want to just publish it individually or put it on the overhead. But if you--I think if you want to do it on the overhead, that's fine, and then we can--we'll just have everybody out.

At trial, the district court excluded spectators from the courtroom on at least two occasions, without defense objection, while the photographs were being shown as exhibits. One closure occurred while the victim identified herself in the photos, and one while a computer forensic examiner identified the photos as those that had been found on a computer in Overline's home. The courtroom apparently was open for all other portions of the trial, including the victim's testimony that was unrelated to the photographs. The jury returned guilty verdicts on all three charges.

Overline appeals, asserting that his convictions must be reversed because the closure of the courtroom violated his constitutional right to a public trial. He also asserts that his sentences are excessive.

## II.

## ANALYSIS

### A. The Sixth Amendment Right to a Public Trial

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *In re*

---

[1]    This statute has been repealed, effective July 1, 2012.

*Oliver*, 333 U.S. 257, 278 (1948). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *Oliver*, 333 U.S. at 270 n.25).[2] "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46. *Waller* sets forth the procedures that must be followed before a criminal trial may be closed over a defense objection:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48. Because of the "great, though intangible, societal loss that flows from closing courthouse doors," the denial of a right to a public trial is considered a structural error from which prejudice is presumed. *Id.* at 49 n.9 (internal quotations and citation omitted).

Because Overline made no objection to the courtroom closures that occurred here, his claim that his right to a public trial was violated is reviewable on appeal only if he demonstrates that the trial court's action constituted fundamental error. *State v. Perry*, 150 Idaho 209, 225-26, 245 P.3d 961, 977-78 (2010). To demonstrate fundamental error, the defendant's first burden is to show that one or more of the defendant's *unwaived* constitutional rights was violated. *Id.* at 226, 245 P.3d at 978. That is, the claimed error is not reviewable if the constitutional right was waived at the trial court level. *Id.* at 225, 245 P.3d at 977. *See also United States v. Olano*, 507 U.S. 725, 732-34 (1993) (holding that if a right is waived, no "error" has occurred).

In the present case, defense counsel plainly waived any objection to the closure of the trial when he said, "That's fine," after the court expressed a preference to clear the courtroom and asked, "Is that okay with you?"[3] Overline asserts, however, that defense counsel's consent

---

[2]  The press and the public also possess, via the First Amendment, an enforceable right to an open and public trial proceeding, which can be foreclosed over their objection only in limited circumstances. *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509-10 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).

[3]  Overline argues that the attorney's response was not a consent to closure of the courtroom because "defense counsel was asked whether he was okay with the district court's

to the exclusion of spectators does not preclude review of his claim of fundamental error because a valid waiver of the right to a public trial requires a personal and informed waiver by the accused himself.

Not all of a criminal defendant's constitutional rights are subject to waiver by only the defendant personally. As explained by the United States Supreme Court:

> What suffices for waiver depends on the nature of the right at issue. "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). For certain fundamental rights, the defendant must personally make an informed waiver. *See, e.g.*, *Johnson v. Zerbst*, 304 U.S. 458, 464-465, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) (right to counsel); *Brookhart v. Janis*, 384 U.S. 1, 7-8, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966) (right to plead not guilty). For other rights, however, waiver may be effected by action of counsel. "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has--and must have--full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 417-418, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). As to many decisions pertaining to the conduct of the trial, the defendant is "deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L. Ed. 955 (1880)). Thus, decisions by counsel are generally given effect as to what arguments to pursue, *see Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983), what evidentiary objections to raise, *see Henry v. Mississippi*, 379 U.S. 443, 451, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965), and what agreements to conclude regarding the admission of evidence, *see United States v. McGill*, 11 F.3d 223, 226-227 (C.A.1 1993). Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.

*New York v. Hill*, 528 U.S. 110, 114-15 (2000). In addition to the two fundamental rights mentioned in *Hill*--the right to counsel and the right to plead not guilty--the United States Supreme Court has identified several other rights that cannot be waived without a defendant's personal and informed consent. These include the right to a jury trial, the right to be present at trial, the right to testify on one's own behalf and the right to appeal. *Florida v. Nixon*, 543 U.S.

---

intention to 'clear the area' *or* publish the photographs privately to the jury." This assertion is not a reasonable characterization of the colloquy; defense counsel was plainly consenting to the district court's preference to "clear the area."

4

175, 187 (2004); *Taylor v. Illinois*, 484 U.S. 400, 417-18 n.24 (1988); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Such decisions involving basic trial rights, the Supreme Court has said, "are of such moment that they cannot be made for the defendant by a surrogate." *Nixon*, 543 U.S. at 187.

We have found no United States Supreme Court decision suggesting that waiver of the Sixth Amendment right to a public trial is within the category of decisions reserved exclusively to the defendant. On the contrary, although they do not squarely address the issue, two Supreme Court opinions strongly indicate that exclusion of the public from a trial does not require the defendant's express consent. In the first, *Levine v. United States*, 362 U.S. 610 (1960), the trial court had excluded the public from the courtroom before trying and sentencing the defendant for a criminal contempt committed when the defendant refused to respond to the questions of a grand jury. No objection to the courtroom closure was made by the defense. The Supreme Court noted that because criminal contempt proceedings are not "criminal prosecutions" for which a public trial is guaranteed by the Sixth Amendment, the public trial right at issue in *Levine* did not derive from the Sixth Amendment but from the constitutional guarantee of due process. The Court held that the exclusion of the public was not "contrary to the requirements of the Due Process Clause" because no objection to the closure had been made. *Id.* at 619. Notably, the *Levine* majority reached its holding over the dissents of four Justices, two of whom were of the opinion that the defendant's personal waiver of the right should be required. *Id.* at 626 (Brennan, J. dissenting). *Levine* is not squarely on point for our inquiry because it involved a due process analysis rather than "one of the explicitly defined procedural safeguards of the Constitution," *id.* at 616, and because the Court's analysis turned, in part, upon the fact that the contempt arose in a grand jury inquiry, which was itself a closed proceeding. *Id.* at 617. Nevertheless, *Levine* is indicative that the Supreme Court did not view the right to a public trial to be of such a magnitude that it could be extinguished only by an informed personal waiver from the defendant.[4]

The second informative case is *Waller*, where multiple defendants sought suppression of evidence and participated in a single suppression hearing. On the prosecution's motion, the trial

---

[4] In a subsequent decision, *Peretz v. United States*, 501 U.S. 923, 936 (1991), the Supreme Court cited *Levine* in dictum for the proposition that "failure to object to closing of courtroom is waiver of right to public trial."

court closed the suppression hearing to the public. Four of the defendants objected to the closure but the fifth did not. Instead, "*[c]ounsel for petitioner Cole* concurred in the prosecutor's motion to close the suppression hearing," and the state consequently argued that Cole was precluded from challenging the closure on appeal. *Waller*, 467 U.S. at 42 n.2 (emphasis added). Rather than ruling on this waiver issue as a matter of federal constitutional law, the Supreme Court remanded Cole's case to the Georgia state courts to determine "whether Cole is procedurally barred from seeking relief as a matter of state law." *Id.* If the Court had been of the view that the Sixth Amendment right to a public trial may not be waived by counsel, it would seem that the Court would have held that Cole's right had not been waived, rather than remanding for consideration of a possible procedural bar under state law.

Even if *Levine* and *Waller* are not dispositive, we conclude that waiver of the right to a public trial is not a decision for which the defendant's consent is required. Rather, it is the type of strategic or procedural decision that properly may be left to the judgment of defense counsel. Although from the standpoint of societal interest in good government the public trial guarantee provides an important safeguard against judicial or prosecutorial misbehavior, in most cases courtroom closure will be of little or no consequence to the way the trial is conducted and of no detriment to the defendant. From the standpoint of the accused, whether to exclude the public from all or a portion of the trial is by no means commensurate with the highly consequential decisions mentioned above that are reserved to the defendant alone. We think the Utah Supreme Court aptly analyzed the issue in *State v. Butterfield*, 784 P.2d 153 (Utah 1989):

> A unifying characteristic of these rights [requiring a personal, knowing waiver by the defendant] appears to be that they are of central importance to the quality of the guilt-determining process and the defendant's ability to participate in that process. . . .
> We judge the right to a public trial to be of a different order. Certainly it is important in assuring that abuses by the state are not permitted to be hidden from public view. . . . On the other hand, the absence of the public in a particular case does not necessarily affect qualitatively the guilt-determining process or the defendant's ability to participate in the process. . . . Of course, it is possible that in a particular case the wrongful closure of a trial could have an adverse impact and that counsel would have failed to preserve an objection. However, the mere possibility of such an instance does not seem to warrant the imposition of a requirement of a personal waiver of the right to a public trial in all cases. Such possibilities are better dealt with via an ineffective assistance of counsel claim.

6

*Id.* at 156 (citations omitted).  A number of other courts have likewise held that the Sixth Amendment right to a public trial is subject to waiver by defense counsel or to forfeiture by failure to object.[5]  *See Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009); *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006); *United States v. Sorrentino*, 175 F.2d 721, 723 (3rd Cir. 1949); *People v. Vaughn*, 821 N.W.2d 288, 300 (Mich. 2012).  Decisions to the contrary from other jurisdictions have been cited by Overline.  It suffices to say that we do not find their analysis persuasive.[6]

Accordingly, we hold that Overline's defense attorney effectively waived any objection to the closure of the courtroom during portions of the trial.  Because Overline's counsel waived the constitutional right at issue, Overline has not met the first prong of the *Perry* test for fundamental error--that an unwaived constitutional right was violated.  Therefore, the issue is not subject to fundamental error review.

**B.      Sentences and Rule 35 Motion**

The district court imposed a term of imprisonment of twenty years with five years fixed for lewd conduct, a concurrent term of imprisonment of twenty years with five years fixed for sexual abuse, and a concurrent ten-year term of imprisonment with five years fixed for possession of sexually exploitative material.  Overline contends that his sentences are excessive and that the district court erred in denying his subsequent Idaho Criminal Rule 35 motion for reduction of his sentences.

An appellate review of a sentence is based on an abuse of discretion standard.  *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000).  Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).  A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case.  *State v. Nice*,

---

[5]      Waiver is distinct from forfeiture.  Our Supreme Court, quoting from *United States v. Olano*, 507 U.S. 725, 732-33 (1993), has explained the distinction:  "Waiver is different from forfeiture.  Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."  *Perry*, 150 Idaho at 225, 245 P.3d at 977 (internal quotation and citation omitted).

[6]      We also note that one of the decisions cited by Overline, *Commonwealth v. Edward*, 912 N.E.2d 515 (Mass. App. Ct. 2009) was effectively overruled by a subsequent decision of that state's Supreme Court, *Commonwealth v. Dyer*, 955 N.E.2d 271, 281-82 n.8 (Mass. 2011).

103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

Overline had virtually no criminal record before the present offenses, but these offenses were serious ones. Overline took more than fifty explicit nude photographs of his girlfriend's ten-year-old daughter while she was asleep. The photographs focused on the victim's pre-pubescent breasts, her anus, and her vaginal area. Overline's hands could be seen in a number of the pictures, touching and exposing the victim's private parts. He cataloged the photos on a computer, organizing them into folders under offensive and lewd titles. On one occasion, the victim woke to Overline in the act of pulling down her bed sheets. On yet another occasion Overline put his hand down the victim's nightshirt, and when the child told her mother what he had done, Overline convinced the mother and the victim that it had all been a dream.

In his Rule 35 motion, Overline claimed that he wrongfully received "5 + 15 for taking some pictures" and that other inmates had received lesser sentences for what were, in his view,

more egregious crimes. In its order denying relief, the district court rejected Overline's attempt to paint himself as the victim, noting that the pictures were clearly pornographic and that they documented Overline's physical molestation of the victim. The district court found that its sentences imposed punishment that fit the crimes, and that the sentences were necessary to protect society from future similar crimes and to allow for a period of rehabilitation.

On appellate review of a sentence, the question before this Court is not whether the sentence is one that we would have imposed, but whether it is clearly excessive under any reasonable view of the facts. *State v. Stover*, 140 Idaho 927, 933, 104 P.3d 969, 975 (2005); *State v. Nienburg*, 153 Idaho 491, 498, 283 P.3d 808, 815 (Ct. App. 2012). On this record, we cannot say that the sentences imposed constitute an abuse of the trial court's discretion or that the court abused its discretion in denying Overline's motion for Rule 35 relief.

## III.

## CONCLUSION

The judgment of conviction, the sentences, and the order denying Rule 35 relief are affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**