**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42418**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Unpublished Opinion No. 676S |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 18, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DONALD RAY YARBER, III, | ) | SUBSTITUTE OPINION |
| | ) | THE COURT'S PRIOR OPINION |
| Defendant-Appellant. | ) | DATED OCTOBER 28, 2015, |
| | ) | HAS BEEN PREVIOUSLY |
| | ) | WITHDRAWN |
| | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction and sentences for five counts of video voyeurism, affirmed.

James K. Ball of Manweiler, Breen, Ball & Davis, PLLC, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Donald Ray Yarber, III, appeals from his judgment of conviction and sentences for five counts of video voyeurism. Specifically, Yarber asserts that the district court erred in admitting certain evidence at trial, that the district court erred in denying his motion for judgment of acquittal, and that his sentences are excessive. For the reasons set forth below, Yarber's judgment of conviction and sentence are affirmed.

1

# I.

## FACTS AND PROCEDURE

Yarber and K.B. were in a relationship for fourteen years when the relationship ended. During a period of reconciliation, K.B. sent a number of nude images of herself to Yarber. Thereafter, K.B. terminated communication with Yarber. Yarber responded by calling K.B.'s place of employment hundreds of times. He also used the photos he had received from K.B. to post ads on Craigslist, purporting to be K.B. seeking sexual encounters. Hundreds of men responded to the ads and Yarber gave many men the phone number to K.B.'s place of employment. He gave men K.B.'s address, several of whom went to her apartment seeking sex. Among other charges, Yarber was charged with five counts of video voyeurism. I.C. § 18-6609(2)(b). At trial before a jury, evidence of Yarber's general Craigslist usage and postings of K.B.'s nude images, other than those for which he was charged, were admitted over Yarber's objection. Yarber moved for a judgment of acquittal on the video voyeurism charges, which was denied. Yarber was found guilty of the five counts.[1] The district court sentenced Yarber to a determinate term of five years; a consecutive unified term of five years, with a minimum period of confinement of two years; one consecutive unified term of five years; and two indeterminate terms of five years, to run concurrently. Accordingly, Yarber's aggregate sentence for the five counts is a unified term of fifteen years, with a minimum period of confinement of seven years. Yarber appeals, alleging the district court erred in admitting certain evidence at trial, that the district court erred in denying his motion for judgment of acquittal, and that his sentences are excessive.

# II.

## ANALYSIS

### A.    Motion for Judgment of Acquittal

Yarber alleges that the district court erred in denying his motion for judgment of acquittal because the evidence presented to the jury was insufficient to find him guilty of video voyeurism. Idaho Criminal Rule 29 provides that when a verdict of guilty is returned, the court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is

---

[1]    Yarber was also found guilty of one count of telephone harassment and one count of disturbing the peace, which are not challenged on appeal.

insufficient to sustain a conviction of the offense. The test applied when reviewing the district court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

In his motion for judgment of acquittal, Yarber argued that the prosecution failed to show that he had the intent required by the statute to be found guilty of the crime of video voyeurism. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

The statute at issue, I.C. § 18-6609,[2] provides, in pertinent part:

---

[2]     Idaho Code Section 18-6609 has been amended effective July 1, 2014, substantially changing the *mens rea* requirement. However, at the time of Yarber's conduct, the 2004 version set forth in part here was in effect.

3

(2)    A person is guilty of video voyeurism when, with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires of such person or another person, or for his own or another person's lascivious entertainment or satisfaction of prurient interest, or for the purpose of sexually degrading or abusing any other person:

. . . .

(b)    He intentionally disseminates, publishes or sells any image or images of the intimate areas of another person or persons without the consent of such other person or persons and with knowledge that such image or images were obtained with the intent set forth above.

Under subsection (b), a person is guilty of video voyeurism if the following elements are met: (1) he or she intentionally disseminates, publishes, or sells any image or images of the intimate areas of another person or persons; (2) without the consent of such other person or persons; (3) with the requisite knowledge.

In this case, it is uncontested that Yarber intentionally published images of the intimate areas of K.B. without her consent. The sole issue here is whether Yarber had the requisite knowledge to be found guilty of video voyeurism. The knowledge required to be found guilty of video voyeurism is knowledge that the image or images were obtained with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or another person; for his or her own or another person's lascivious entertainment or satisfaction of prurient interest; or for the purpose of sexually degrading or abusing any other person.

We must answer three questions to determine whether Yarber had the requisite knowledge to be found guilty of video voyeurism. The first question is who obtained the images. The second question is what that person's intent was at the time he or she obtained the images. The third question is whether Yarber knew of that person's intent at the time he published the images. We will address each in turn.

The first question is who obtained the images that Yarber published. The term "obtain" is not defined in the statute. Accordingly, we will give the term its plain, obvious, and rational meaning. *See Burnight*, 132 Idaho at 659, 978 P.2d at 219. Obtain is defined as "to gain or attain possession . . . of [something, usually] by some planned action or method." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1559 (3d ed. 1993). Although Yarber took possession of the pictures of K.B., there is no evidence in the record that Yarber took any action to get possession

4

of the pictures. K.B. testified at trial that she had taken this type of picture before and that she sent the pictures to Yarber because she knew he liked the pictures. She also testified that Yarber did not ask her for the pictures. Thus, it appears that K.B.'s sending the pictures to Yarber was gratuitous and unsolicited. Accordingly, we hold that Yarber did not "obtain" the images that he published, within the meaning of the statute, because he did not use any planned action or method to get possession of the images. Therefore, Yarber could not have had any intent in receiving the images. The person who obtained the images was M.B, who used a camera to take the pictures of herself.

This leads to our second question--what K.B.'s intent was when she obtained the images. At trial, K.B. testified that the images were obtained for a sexual purpose. When questioned by the prosecutor, the following exchange took place:

Q. And were these pictures taken for a sexual purpose?
A. Yes.
Q. What was the circumstances surrounding the taking and the sending of these photos?
A. He liked them and we had been together for a long time. For sexual purposes.
Q. Okay. Kind of to arouse or to appeal to him?
A. Yes.

It is clear from K.B.'s testimony that she obtained the images with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of Yarber.

The final question in determining whether Yarber had the requisite knowledge to be found guilty of video voyeurism is whether there was sufficient evidence presented to the jury upon which it could have found that Yarber knew K.B. obtained the images with the intent of arousing, appealing to, or gratifying Yarber's lust or passions or sexual desires. In an interview with an officer, the recording of which was played to the jury, Yarber's knowledge regarding K.B.'s intent was evident. During the interview, the officer asked Yarber what K.B.'s purpose was in sending the images to Yarber. Yarber responded that her purpose was sexual. Later in the interview, Yarber elaborated and explained that "the whole conversation was like 'Oh I'm lonely. I wish you were in my bed.'" From Yarber's admissions, the jury had sufficient evidence to find that Yarber knew that K.B. obtained the images with the intent of arousing, appealing to, or gratifying Yarber's lust or passions or sexual desires. Because there was sufficient evidence

presented to the jury upon which it could find Yarber guilty of video voyeurism, the district court did not err in denying Yarber's motion for judgment of acquittal.

**B.    Admitted Evidence**

At trial, the state sought to introduce evidence of Yarber's general use of Craigslist to meet women and and that he responded to two Craigslist ads with nude images of himself.  The state also sought to introduce evidence of an additional posting by Yarber (showing K.B.'s nude images) on January 4, 2014, after the postings for which he was charged.  Yarber objected to the admission of both under Idaho Rule of Evidence 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior.  *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009); *see also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002).  Of course, evidence of another crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule.  *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred.  If so, then the court must consider:  (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice.  *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).  On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record.  *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

In this case, Yarber does not challenge the existence of the additional Craigslist ad of K.B.'s images or his general Craigslist usage as established facts. Therefore, we would only be required to address the relevancy and unfair prejudice issues. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

In this case, it is unnecessary for this Court to determine whether the district court erred in admitting the disputed evidence at trial. Assuming, without deciding, that the evidence was erroneously admitted, we review the record to determine whether the error was harmless. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the state has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010). However, where the error in question is a constitutional violation that affects the base structure of the trial to the point that the trial cannot serve its function as a vehicle for the determination of guilt or innocence, the appellate court shall vacate and remand. *Id.* Such structural defects include the complete denial of counsel, a biased trial judge, denial of self-representation, denial of a public trial, defective reasonable doubt instruction, and erroneous deprivation of the right to counsel of choice. *Id.* at 222-23, 245 P.3d at 974-75. Although structural defects require automatic reversal, most constitutional violations will be subject to a harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8 (1999).

As described above, there was ample evidence, without the evidence challenged here, upon which the jury could have found Yarber guilty of video voyeurism. It was uncontested that Yarber intentionally published images of the intimate areas of K.B. without her consent. In addition, as explained in Subsection A above, there was evidence that Yarber had the requisite knowledge to be found guilty of video voyeurism. Thus, this Court is convinced that the

7

evidence of Yarber's Craigslist activity, other than that for which he was charged, did not contribute to his being found guilty of video voyeurism. Accordingly, the presumed error in admitting the evidence was harmless.

## C.     Sentence Review

Yarber alleges that the district court abused its discretion in sentencing him to an aggregate indeterminate term of fifteen years, with a minimum period of confinement of seven years. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In making its sentencing determination, the district court analyzed the *Toohill* factors in light of the facts of Yarber's case. Specifically, the district court relied on the following facts. Yarber and K.B. were in a relationship for fourteen years and had been living together as a couple. They were planning to get married and had planned and prepaid many of the wedding arrangements when K.B. discovered that Yarber had been unfaithful. As a result, K.B. terminated the relationship. For several weeks, they continued to communicate and see each other until Yarber moved out of state. Communication continued from a distance and, at one point, K.B. sent a number of nude pictures of herself to Yarber. Eventually K.B. discontinued communicating with Yarber. Yarber began calling K.B.'s place of employment many times per

day for five weeks, totaling over 700 calls. Yarber then posted a number of images of K.B.'s breasts and pelvic area on Craigslist. The postings were purported to be placed by K.B. and sought partners for a variety of sexual interactions. The ads received hundreds of responses, including many nude images from men. Posing as K.B., Yarber gave many of the men K.B.'s work phone number. As a result, K.B. received a number of calls at work from unknown men. Yarber also provided men the address to K.B.'s apartment and several went to her apartment seeking sex. One individual told K.B. that he had come to fulfill her purported "rape fantasy" and attempted to kick through the door of her apartment. On several occasions, K.B. called the police to respond to men who would not leave her apartment. Eventually, a police car was stationed outside K.B.'s apartment to prevent men from approaching K.B.'s apartment. As a result of Yarber's actions, K.B. lost her employment, where she had a successful career. In addition, K.B. left the state and moved to an unknown location. According to the district court, K.B. was financially and emotionally destroyed by Yarber's actions, which forced her to leave her home and career to protect herself from Yarber and further abuse.

The district court described the facts of this case and explained that it was basing Yarber's sentences on the evidence presented at trial. The district court considered Yarber's lack of a criminal history but explained that Yarber methodically harassed K.B., ruining her life and forcing her to move and change jobs. In arriving at Yarber's sentences, the district court found several aggravating factors. In particular, the district court emphasized Yarber's apparent lack of remorse and failure to recognize the harm he had caused K.B. Ultimately, the district court concluded that Yarber's sentences fulfilled the objectives of protecting society and achieved the goals of deterrence, rehabilitation, and retribution. There is ample evidence in the record for this Court to hold that the district court's sentences were reasonably tailored to achieve the sentencing goals of protecting society, including K.B.; deterring Yarber from committing similar future crimes; rehabilitating Yarber; and retribution for the harm Yarber caused K.B. Accordingly, Yarber has not shown that the district court erred in sentencing him to an aggregate indeterminate term of fifteen years, with a minimum period of confinement of seven years.

## III.
## CONCLUSION

Yarber has not shown that the district court erred in denying his motion for judgment of acquittal.  In addition, Yarber has not shown that evidence admitted at trial warrants reversal. Finally, Yarber has not shown that the district court abused its discretion in sentencing him. Therefore, we affirm Yarber's judgment of conviction and sentences for five counts of video voyeurism.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.