# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49883

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: August 29, 2023 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| JACK LEE RINEBARGER, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Judgment of conviction and unified sentence of fifteen years, with a minimum period of confinement of ten years, for first degree kidnapping and consecutive, unified sentence of five years, with a minimum period of confinement of one year, for aggravated assault, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Jack Lee Rinebarger appeals from his judgment of conviction for attempted first degree kidnapping and aggravated assault. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In response to his belief that the victim was cheating on him, Rinebarger pointed a gun in the victim's face and threatened that she was going to "get what she deserve[s]."[1] Approximately

---

[1] The victim stated the gun was an AR-15 style rifle. Rinebarger told law enforcement it was a .177 caliber air rifle, but admitted he threatened the victim by stating that you "better be careful because you know I have guns."

1

three weeks later, Rinebarger continued to accuse the victim of being unfaithful. While the victim was sitting in her vehicle in the driveway, Rinebarger demanded she come inside, broke the driver's side window of her vehicle, and threatened to drag her out of the broken window and into the house. Rinebarger then got into his truck, positioned it behind the victim's vehicle to block it from leaving, and used his truck to attempt to forcibly push the victim's vehicle into the garage. Rinebarger was trying to force the victim into the home because he was "pissed," wanted to "tie her ass up," and "teach her a lesson." Inside the home, there was a shovel by the front door (a door with multiple knives stabbed in it) and a large axe on the floor. In one of the bedrooms there was a makeshift restraint system made from a bedsheet torn into five pieces--one on each corner of the bed, and one in the top middle section of the bed with a knot in the middle of it. Rinebarger intended to use the knot to gag the victim. Rinebarger stated he intended to rape the victim once he had her restrained in the bedroom. Rinebarger also told law enforcement he had packed provisions so he could flee to the mountains afterwards.

The State charged Rinebarger with first degree kidnapping, aggravated assault, malicious injury to property, and second degree stalking. The State also charged Rinebarger with a deadly weapon enhancement. While incarcerated pending resolution of the criminal charges in this case, Rinebarger wrote letters to several businesses associated with the victim's work in which Rinebarger made various derogatory claims about the victim's work-related activities and alleged drug use. Rinebarger also wrote letters to his sister in which he referred to the victim as a "crack whore" and sought his sister's assistance with pursuing forgery charges against the victim and bringing the "toothless crackhead down." Rinebarger wrote other letters from jail in which he referred to the victim as an "old fat whore," a "low life skank," an "ugly skank," an "ugly bitch" and a "very very stupid whore," and stated his "master plan" was to "destroy[] the ugly whore['s] life" and make her "life a living hell."

Pursuant to a plea agreement, Rinebarger pled guilty to an amended charge of attempted first degree kidnapping (I.C. §§ 18-4501, 18-4502, and 18-306) and pled guilty to aggravated assault (I.C. §§ 18-901(b) and 18-905(a)). The remaining charges and the sentence enhancement

were dismissed.[2] The district court sentenced Rinebarger to a unified term of fifteen years, with a minimum period of confinement of ten years, for attempted first degree kidnapping and a consecutive unified term of five years, with a minimum period of confinement of one year, for aggravated assault. Rinebarger appeals.

## II.

## STANDARD OF REVIEW

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 249 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Rinebarger argues that the district court abused its sentencing discretion because it improperly focused on the "aggravating nature of the specific conduct of this case, and in doing so, downplayed the mitigating factors." Rinebarger further argues that his case is "strikingly similar" to *State v. Shideler*, 103 Idaho 593, 651 P.2d 527 (1982), and that, "as in *Shideler*, a sufficient consideration of all the mitigating factors demonstrates a more lenient sentence was appropriate despite the gravity of the offenses." The State responds that the district court "acted reasonably and within the scope of its discretion." We hold that, under the applicable legal standards, Rinebarger has failed to show the district court abused its sentencing discretion.

Where, as here, the sentence is not illegal, and Rinebarger has the burden of showing his sentence is unreasonable and, thus, a clear abuse of discretion. *See State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting

---

[2] Rinebarger entered his guilty pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).

3

society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role, however, is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020).

Before imposing sentence, the district court correctly identified the four sentencing objectives and noted the primary consideration is the protection of society, with rehabilitation contributing to that goal. The district court also recognized the mitigating information advanced by Rinebarger, including that he is older and has "been law abiding, or at least staying out of the purview of the legal system for most of [his] life" and that he took accountability for his offenses as demonstrated by his guilty pleas. The district court, however, rejected that "alcohol alone" explained Rinebarger's criminal conduct, noting that "even those that are habituated with alcohol typically don't engage in this level of violence or threat to other people." Moreover, Rinebarger was found to be in the high risk range on the alcohol scale with a high risk for relapse. Further, in terms of the risk Rinebarger presents, the domestic violence evaluator concluded Rinebarger is at high risk for future domestic violence and a "problem risk" for violence, control, and stress coping. As noted by the district court, Rinebarger's crimes were "very serious" and "remarkably disturbing."

Rinebarger acknowledges his criminal conduct was "deeply concerning," like the conduct in *Shideler*, but claims that, also like *Shideler* (and even more so than in *Shideler*), a "more lenient sentence" is warranted. To the extent Rinebarger's argument invites a comparative sentencing analysis with *Shideler*, we decline the invitation. As we have previously explained, it is "well settled that not every offense in like category calls for identical punishment; there may properly be a variation in sentences between different offenders, depending on the circumstances of the crime and the character of the defendant in his or her individual case." *State v. Pederson*, 124

Idaho 179, 183, 857 P.2d 658, 662 (Ct. App. 1993). There is no principle in *Shideler* that states otherwise, nor is Rinebarger's factual comparison to *Shideler* persuasive.

The defendant in *Shideler* was charged with armed robbery, assault with a deadly weapon, and possession of a firearm during the commission of a crime for his part in a bank robbery, which included him firing two shotgun blasts from a getaway van toward a pursuing truck driven by the spouse of one of the bank employees. *Shideler*, 103 Idaho at 594, 651 P.2d at 528. The defendant pled guilty to armed robbery and was sentenced to an indeterminate term not to exceed twenty years. The Idaho Supreme Court characterized the defendant's conduct as "among the most serious of crimes" and determined it was appropriate to consider the threatened harm despite that nobody was injured as a result. *Id.* At sentencing, the defendant testified that since his arrest and subsequent release on bond pending adjudication of his criminal charges, he recovered from his substance abuse problems, which he believed contributed to his criminal conduct, became employed, and expressed regret for his conduct. The defendant's family members and his employer all testified in support of the defendant and the progress he made and agreed he was not a "hardened criminal." *Id.* at 595, 651 P.2d at 529. The Idaho Supreme Court concluded:

> Besides this being [the defendant's] first felony, [which is entitled to more lenient treatment than a habitual offender], the record discloses that the defendant has accepted responsibility for his acts, and that his family and employer have shown considerable interest in his future. We conclude that the defendant's character and the circumstances surrounding the case are compelling in nature, and sufficiently outweigh the gravity of the crime and the protection of the public interest to require us in furtherance of justice to reduce the sentence of imprisonment from an indeterminate term not to exceed twenty years to an indeterminate term not to exceed twelve years.

*Id.*

The Court's determination in *Shideler* that "justice" required a reduction in the defendant's sentence in that case does not translate legally or factually to this case. It does not translate legally because, as noted, we do not engage in comparative sentencing review and nothing in *Shideler* requires a sentence reduction under any specific circumstance. Moreover, our role is not to reweigh the evidence; our role is to determine whether reasonable minds could reach the same conclusion as the district court. *Biggs*, 168 Idaho at 116, 480 P.2d at 154. That standard is satisfied in this case.

*Shideler* also does not translate factually to this case because, unlike in *Shideler*, Rinebarger inflicted harm upon his victim with evidence of an intent to inflict even greater harm had law enforcement not intervened. Also, unlike in *Shideler*, although Rinebarger accepted responsibility by pleading guilty, his post-arrest conduct does not demonstrate remorse, stability, or a change in his criminal thinking. The opposite is true--Rinebarger continued to take steps to torment and harass his victim even while incarcerated and despite a no-contact order. Rinebarger's characterization of *Shideler* as "present[ing] a strikingly similar situation" to his own case is without merit. Neither Rinebarger's character nor the circumstances surrounding this case sufficiently outweigh the gravity of the crimes he committed. Contrary to Rinebarger's arguments, the district court did not "discount" the mitigating factors as "insignificant or unimportant." Instead, the district court recognized the boundaries of its discretion, the applicable legal standards, and exercised reason in imposing sentence. Rinebarger's claim that the district court abused its sentencing discretion fails.

## IV.

## CONCLUSION

Rinebarger has failed to show the district court abused its discretion in sentencing him to a consolidated unified twenty-year term, with a minimum period of confinement of six years, for attempted first degree kidnapping and aggravated assault. Rinebarger's judgment of conviction and sentences are affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.