# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 43333

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 543** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: May 18, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JORGE A MORA ELIZONDO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge.

Judgment of conviction and unified sentence of five years with two years determinate for felony injury to a child, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Jorge A Mora Elizondo appeals from his judgment of conviction and unified sentence of five years with two years determinate for felony injury to a child. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Elizondo lived with his fiancé and her daughter. His fiancé's daughter, A.M., told police Elizondo had sexual contact with her on two occasions. She said he ordered her to insert an object into her vagina on the first occasion. She said he got on top of her, held her hands down above her head, choked her, lifted her shirt, put his hand on her stomach and chest, and became aroused on the second occasion.

The State charged Elizondo with two counts of sexual battery of a minor child sixteen or seventeen years of age, Idaho Code § 18-1508A, and one count of felony injury to a child, I.C.

1

§ 18-1501(1).  The felony injury to a child count alleged Elizondo choked A.M.  In exchange for Elizondo's *Alford*[1] plea to felony injury to a child, the State dismissed the battery counts and agreed to recommend probation and local jail time.  The State did not agree to recommend a specific underlying prison sentence, supervised probation period, or amount of local jail time.  The State filed an amended information which contained only a felony injury to a child count which alleged Elizondo had sexual contact with A.M.

Prior to sentencing, the court received the presentence investigation report (PSI), which included A.M.'s allegations.  At sentencing, A.M. said she did not feel safe enough to provide an oral statement, but she submitted a written statement to the court.  A.M.'s mother provided an oral statement, stating:

> A mother should never have to go through what I've been going through for the last four months with my daughter.  She is a sixteen-year-old little girl who's had nightmares, trouble sleeping, problems trusting people, and having to explain to a little girl that having a grown man on top of you strangling you is not your fault, it's not your fault he puts his hands up your shirt, and having to talk to your father about this sort of thing, it's just unfair. . . .  It's affected our family, affected our friends, affected our livelihood.  This isn't going to just affect her in the short-term, this is going to be long-term.  She's a strong little girl, but she's still a little girl who is afraid that if he's put on six months of probation that who's to say that when we're sleeping at night that he can['t] sneak in?  This is what we talk about all the time.  And she--we're constantly checking our doors and we're afraid to run into him at night.  Even though there's no contact, that's just a piece of paper.  And there's long-term damage.  He's manipulated all of us into believing he was someone he wasn't.  And [A.M.] is not--it's going to be a long time before she feels safe, as we all will take a long time.

The prosecutor recommended an underlying unified sentence of seven years with four years determinate, suspended in favor of four years of probation, and approximately six months of local jail time.  The prosecutor stated:

> In this particular case, there was a pretrial settlement offer with a recommendation for local jail time and probation.  As such, the State's recommendations in this case is for four years fixed followed by three years indeterminate for a seven-year unified sentence.  We're asking [the court] to place the defendant on four years of supervised probation, and we are asking for the Court to impose some actual jail time.  Obviously, the PSI does recommend a retained jurisdiction, but we're bound by our recommendation for time and probation.

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

This case involves some very serious allegations, a very disturbing set of facts. However, I think something that the State had taken into consideration was this was a first criminal conviction of any kind.

So, with that being said, I think given the nature of the offense that the defendant has pled guilty to and has taken accountability for, the felony injury to a child, I think that there should be some significant jail time imposed without the potential for work release or even treatment release, if that was appropriate. I think somewhere between six months is appropriate given the severity of this offense and the fact that the PSI does recommend a rider. I think taking that into account, I think a longer period of incarceration would certainly be appropriate.

This has obviously affected A.M. and her family and caused significant damage to them, so I think that some punishment is certainly appropriate.

I also think that in a case like this, we have to consider deterrence to the public, as well as to the defendant in this case, and so I think a seven-year sentence, a heftier sentence, would certainly be appropriate.

Normally, given lack of criminal history, we would probably recommend something lower, but I think given the nature of this particular offense, that would be a more appropriate sentence for deterrence, as well as placing the defendant on a longer period of supervised probation. I think that would be beneficial in order to ensure that we don't have other law violations and that the public is protected.

Elizondo objected to the prosecutor's statements, contending she impliedly breached the plea agreement. The district court sentenced Elizondo to five years with two years determinate and retained jurisdiction. The district court stated:

As a judge, I am required to consider a number of goals of sentencing. The number one goal is the protection of society.

In addition, I am to consider deterrence, deterrence of this individual who's being sentenced, as well as deterrence of the members of the public at large.

In addition, I am to consider the issue of punishment or retribution, as well as the issue of rehabilitation.

I have reviewed the information that has been presented. I have reviewed the presentence investigation report. . . .

As I see it, I see two options, one of an underlying sentence and probation . . . which would include . . . a local jail sentence, and the other being a retained jurisdiction.

In reviewing the presentence investigation report, I note that Mr. Mora Elizondo had an aggregate LSI score of 17, which places him in the moderate risk category. . . .

I am concerned about the potential risk and the risk factors as it relates to this particular offense. Although he entered an *Alford* plea, the allegation of this specific count stated that he did willfully inflict upon a child under the age of 18, to wit: under the age of 16 years, unjustifiable physical pain or mental suffering, to wit: choking her by placing his hands around her neck while he was on top of her, all of which is contrary to the form, force, and effect of the statute.

In this case, I am going to impose an underlying sentence, in light of . . . the fact that he has no prior criminal history[,] of two years fixed, three years indeterminate, not to exceed five years. I do think for the protection of society, it would be appropriate to have further review of him while in custody, and to do that, I am going to retain jurisdiction.

Elizondo timely appeals.

## II.

## ANALYSIS

Elizondo asserts the prosecutor impliedly breached the plea agreement and the district court abused its sentencing discretion.

### A.    Plea Agreement

Elizondo argues the prosecutor's overall conduct at sentencing impliedly disavowed the plea agreement recommendation, thus constructively breaching the plea agreement. When there has been a contemporaneous objection to an alleged breach of a plea agreement, we first determine factually if the plea agreement was breached. *See State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). If so, we determine whether the breach was harmless. *See id.* Where a breach is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the sentence imposed would have been the same absent the breach. *See id.* Because Elizondo objected to the prosecutor's statements below, we first determine factually if the prosecutor breached the plea agreement.

It is well established that when a plea rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971). Like a contract, a valid plea agreement binds the State to perform the promised obligations. *Puckett v. United States*, 556 U.S. 129, 137 (2009). The State's failure to comply with its obligations constitutes a breach of the agreement and entitles the defendant to appropriate relief. *Id*. As a remedy, the court may order specific performance of the agreement or may permit the defendant to withdraw the guilty plea. *Santobello*, 404 U.S. at 263; *State v. Jones*, 139 Idaho 299, 302, 77 P.3d 988, 991 (Ct. App. 2003).

The prosecution's obligation to recommend a sentence promised in a plea agreement does not carry with it the obligation to make the recommendation enthusiastically. *United States v. Benchimol*, 471 U.S. 453, 455 (1985); *Jones*, 139 Idaho at 302, 77 P.3d at 991. A prosecutor may not circumvent a plea agreement, however, through words or actions that convey a

4

reservation about a promised recommendation, nor may a prosecutor impliedly disavow the recommendation as something that the prosecutor no longer supports. *Jones*, 139 Idaho at 302, 77 P.3d at 991. Although prosecutors need not use any particular form of expression in recommending an agreed sentence, their overall conduct must be reasonably consistent with making such a recommendation rather than the reverse. *Id.* A prosecutor may make additional sentencing recommendations so long as they are not inconsistent or incompatible with the plea agreement. *State v. Wills*, 140 Idaho 773, 775, 102 P.3d 380, 382 (Ct. App. 2004). Further, absent an agreement to the contrary, the prosecutor may refer to information relevant to sentencing and refer to the objectives of sentencing. *Id.*

To assert that the prosecutor's overall conduct breached the plea agreement, Elizondo points to statements the prosecutor made at sentencing that he asserts are inconsistent with the plea agreement. We address each in turn.

Elizondo first asserts the prosecutor constructively disavowed the plea agreement recommendation and impliedly embraced the PSI recommendation. He relies on this Court's decision in *State v. Daubs*, 140 Idaho 299, 92 P.3d 549 (Ct. App. 2004) to support this assertion. In *Daubs*, the prosecutor agreed to recommend retained jurisdiction as part of the plea agreement. *Id.* at 300, 92 P.3d at 550. At sentencing, the prosecutor acknowledged the State agreed to recommend retained jurisdiction, but emphasized that the PSI recommended a prison sentence and explained the basis for the PSI recommendation, including the defendant's crimes, prior record, and substance abuse issues. *Id.* at 301, 92 P.3d at 551. We held "the prosecution impliedly embraced the PSI recommendation, and constructively disavowed its recommendation." *Id.*

Here, the prosecutor stated: "[T]he PSI does recommend a retained jurisdiction, but we're bound by our recommendation for time and probation." The prosecutor then stated: "I think somewhere between six months [local jail time] is appropriate given the severity of this offense and the fact that the PSI does recommend a rider." We are not convinced that the prosecutor's statements regarding the PSI recommendation disavowed the plea agreement recommendation or embraced the PSI recommendation. Unlike the prosecutor's statements in *Daubs*, the prosecutor's statements here did not seek to persuade the court to order the sentence recommended by the PSI. Rather, the statements here were consistent with the plea agreement recommendation of probation and local jail time. The State did not agree to a specific amount of

5

local jail time in the plea agreement. Thus, the prosecutor referred to the retained jurisdiction program--normally six to twelve months in duration--merely to argue that Elizondo should receive at least six months of local jail time. Further, the statements here recognized that the plea agreement bound the State to recommend probation and local jail time and the prosecutor in fact recommended probation and local jail time.

Elizondo next asserts the prosecutor exaggerated statements made by A.M. and her mother. He again relies on *Daubs* for this assertion. The prosecutor in *Daubs* introduced the minor victims' parents at sentencing stating, "They're better able than I am to explain the horrific consequences that this crime has had on them, their daughters, and their entire family." *Daubs*, 140 Idaho at 300, 92 P.3d at 550. We held that the prosecutor's comment, when taken in context of the entire proceeding, "embellish[ed] the nature of the victims' parents' statements." *Id.*

In this case, the prosecutor stated, "This has obviously affected [A.M.] and her family and caused significant damage to them, so I think that some punishment is certainly appropriate." We cannot say the prosecutor's comment was improper. In contrast to the comment in *Daubs*, the comment here did not embellish the statements of those affected by the alleged conduct. Saying the alleged conduct "obviously affected A.M. and her family and caused significant damage to them" was a rather straightforward way of summarizing the statements of A.M. and her mother. Moreover, asking for "some punishment" in light of the statements made by A.M. and her mother did not signal to the judge that he should go beyond the plea agreement recommendation.

Elizondo also asserts the prosecutor unduly emphasized the nature and severity of the alleged conduct. He relies on this Court's decisions in *Wills* and *Jones* for this assertion. In *Wills*, the prosecutor stated at sentencing that the defendant's conduct was "just completely horrendous and almost unthinkable." *Wills*, 140 Idaho at 774, 102 P.3d at 381. In *Jones*, the prosecutor stated at sentencing that the case was "one of the most disturbing cases" she had dealt with and engaged in a lengthy argument emphasizing the violence of the defendant's offense. *Jones*, 139 Idaho at 300-01, 77 P.3d at 989-90.

Here, the prosecutor stated, "This case involves some very serious allegations, a very disturbing set of facts." We are not convinced the prosecutor's statement was improper. Unlike the statements in *Wills* and *Jones*, the prosecutor's statement here did not overly emphasize the nature and severity of the alleged conduct. In fact, the prosecutor's statement was an understated

6

way of describing the alleged conduct, which was set forth in the PSI. The prosecutor did not mention anything about Elizondo choking A.M. or ordering her to insert an object into her vagina. The prosecutor's shorthand description of the alleged conduct was not an attempt to undercut the plea agreement.

Finally, Elizondo asserts the prosecutor undermined his lack of criminal history and emphasized deterrence and the protection of society. The prosecutor stated: "I think something that the State had taken into consideration was this was a first criminal conviction of any kind." The prosecutor then stated,

> I also think that in a case like this, we have to consider deterrence to the public, as well as to the defendant in this case, and so I think a seven-year sentence, a heftier sentence, would certainly be appropriate.
> Normally, given lack of criminal history, we would probably recommend something lower, but I think given the nature of this particular offense, that would be a more appropriate sentence for deterrence, as well as placing the defendant on a longer period of supervised probation. I think that would be beneficial in order to ensure that we don't have other law violations and that the public is protected.

We are not convinced the prosecutor undermined Elizondo's lack of criminal history or put an excessive emphasis on deterrence or the protection of society. Absent an agreement to the contrary, the prosecutor may refer to the objectives of sentencing. *Wills*, 140 Idaho at 775, 102 P.3d at 382. Moreover, the State did not agree to recommend a specific underlying prison sentence or supervised probation period in the plea agreement. Thus, the State was free to recommend an underlying sentence and probation period within the statutory limits for the crime Elizondo pled guilty to. The prosecutor's reference to deterrence and protection of society was in regard to extending the length of the underlying sentence and probation period, not imposing a harsher-than-agreed-upon sentence. While Elizondo's lack of criminal history was relevant to the State's leniency in agreeing to recommend supervised probation and local jail time, it had little bearing on the prosecutor's recommendation regarding the length of Elizondo's underlying sentence and probation period. Although the prosecutor recognized Elizondo's lack of criminal history several times, she sought a longer-than-usual underlying sentence and probation period for a first-time offender to deter Elizondo from reoffending and to protect the public. We cannot say the prosecutor's statements were improper.

When examined in context, the prosecutor's statements in this case are distinguishable from those in the cases cited by Elizondo. This case is more similar to *State v. Halbesleben*, 147 Idaho 161, 206 P.3d 867 (Ct. App. 2009). There, the defendant pled guilty to two counts of

7

felony injury to a child and the State agreed to recommend a ten-year sentence with one year determinate for each count. *Id.* at 164, 206 P.3d at 870. The defendant was free to argue for lesser sentences. *Id.* At sentencing, the prosecutor made the agreed-upon recommendation after reciting some of the troubling facts of the case. *Id.* The prosecutor also argued that any sentences less than the recommendation would depreciate the gravity of the offenses. *Id.* On appeal, the defendant asserted the prosecutor breached the plea agreement because the prosecutor recommended the relatively lenient agreed-upon sentence "only as an afterthought and effectively renounced the recommendation through vigorous argument against [the defendant] and the graphic details and implications of her crimes." *Id.* This Court disagreed, stating:

> The prosecutor's vigorous argument did not undermine the sentencing recommendation but, rather, buttressed it against any argument from defense counsel that [the defendant] merited even lesser sentences based on mitigating factors. Therefore, the prosecutor did not impliedly disavow the sentencing recommendation through her vigorous argument of the facts of [the defendant's] crimes and, thus, did not breach the plea agreement.

*Id.* at 168, 206 P.3d at 874.

Like the defendant in *Halbesleben*, Elizondo was entitled to argue for a lesser sentence. Further, like the prosecutor's argument in *Halbesleben*, the prosecutor's argument in this case did not undermine the plea agreement recommendation, but "buttressed it against any argument from defense counsel" that a lesser sentence was merited. Moreover, the prosecutor in this case did not present any argument that was inconsistent with the plea agreement recommendation of probation and local jail time. This is simply not a case where the prosecutor impliedly disavowed the agreed upon recommendation. Thus, the prosecutor did not breach the plea agreement. Because we hold the prosecutor did not breach the plea agreement, we do not reach the question of whether a breach of the plea agreement was harmless.

**B.    Sentence**

Elizondo argues the district court abused its sentencing discretion by imposing his sentence based on the conduct alleged in the original felony injury to a child charge and despite mitigating factors. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case.

*State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Elizondo first asserts the district court abused its sentencing discretion by imposing his sentence with reference to the dismissed charge of choking A.M., not the sexual contact charge to which he pled guilty. The original felony injury to a child charge alleged Elizondo choked A.M. while on top of her. Pursuant to the plea agreement, the State filed an amended information alleging a felony injury to a child charge based upon Elizondo having sexual contact with A.M. Elizondo pled guilty to the charge in the amended information. In sentencing Elizondo, the district court stated:

> I am concerned about the potential risk and the risk factors as it relates to this particular offense. Although he entered an *Alford* plea, the allegation of this specific count stated that he did willfully inflict upon a child under the age of 18, to wit: under the age of 16 years, unjustifiable physical pain or mental suffering, to wit: choking her by placing his hands around her neck while he was on top of her, all of which is contrary to the form, force, and effect of the statute.

Elizondo thus asserts the district court abused its discretion in pronouncing a sentence based on concerns that stemmed from alleged conduct he did not plead guilty to.

We disagree. While the district court clearly erred in describing the conduct to which Elizondo pled guilty, that error was harmless. The spectrum of information a court may consider at sentencing includes dismissed charges and a victim's version of the criminal act. Idaho Criminal Rule 32(b); *State v. Wickel*, 126 Idaho 578, 580-81, 887 P.2d 1085, 1087-88 (Ct. App. 1994); *State v. Stewart*, 122 Idaho 284, 286, 833 P.2d 917, 919 (Ct. App. 1992); *State v. Barnes*, 121 Idaho 409, 411, 825 P.2d 506, 508 (Ct. App. 1992). Because the choking allegation was included in both a prior dismissed charge and A.M. and her mother's version of the criminal act, the court could properly consider the allegation in pronouncing Elizondo's sentence. Moreover,

A.M. alleged Elizondo had sexual contact with her shortly before, during, and after he choked her. Because the allegations that were the basis for the felony injury to a child charge inextricably involved both choking and sexual contact, there is no reason to believe the court would have given Elizondo a lighter sentence if the court had stated the felony injury to a child charge was based on sexual conduct instead of choking. Thus, we see no harm in the court's consideration of the choking allegation in pronouncing Elizondo's sentence.

Finally, Elizondo asserts his sentence is excessive in light of the following mitigating factors: (1) he has no prior criminal history; (2) he accepted responsibility for his crime; and (3) he would likely succeed on probation based on his ability to obtain employment, lack of substance abuse issues, and support from his family.

A sentence is reasonable if it appears necessary to achieve the primary objective of protecting society or any of the related sentencing goals of deterrence, rehabilitation, or retribution. *Toohill*, 103 Idaho at 568, 650 P.2d at 710. In fashioning Elizondo's sentence, the district court properly weighed the sentencing goals, giving due emphasis to the primary consideration of protecting society. The court stated it had considered deterrence, retribution, rehabilitation, and the primary factor of protection of society. The court then stated its concern about the risk factors associated with Elizondo's alleged conduct and that the PSI placed Elizondo at a moderate risk to re-offend. In order to take reasonable steps to protect society from the risk that Elizondo would re-offend, the court imposed Elizondo's underlying sentence. Moreover, to further assess the risk Elizondo posed, the court retained jurisdiction. Thus, despite the mitigating factors Elizondo points to, Elizondo's sentence was reasonable. Accordingly, considering Elizondo's entire sentence, the nature of his offense, his character, and the public interest, this Court cannot say the district court abused its discretion in pronouncing his sentence.

## III.

## CONCLUSION

The State did not breach the plea agreement and the district court did not abuse its sentencing discretion. Elizondo's judgment of conviction and sentence are affirmed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.

10